[No. B149606. Second Dist., Div. Four. June 5, 2002.]

BOBBY.G. WATTS et al., Plaintiffs and Appellants, v.
FARMERS INSURANCE EXCHANGE, Defendant and Respondent.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts I, II, and III.

**COUNSEL**

Andrews & Hensleigh and Joseph Andrews for Plaintiffs and Appellants.

Nemecek & Cole, Jonathan B. Cole, Julie A. Covell and Michael R. Newhouse for Defendant and Respondent.

**OPINION**

**CURRY, J.**—This case raised the issues of whether a fraud or false swearing defense to an insurance claim can be established without proof that the insurer relied on the misrepresentation to its prejudice and whether an innocent co-insured who holds property jointly with an insured who has committed fraud is automatically excluded from coverage. We hold that the false swearing defense can be raised in the absence of reliance, and that under the wording of the policy in question and the California standard form fire insurance policy, an innocent co-insured may recover for his or her percentage share of the losses despite the transgressions of the other insured. We, therefore, reverse the summary judgment granted by the trial court in part and affirm in part, and remand for further proceedings.

Appellants Bobby G. Watts and Mae Watts brought suit against their insurer, respondent Farmers Insurance Exchange, claiming that Farmers wrongfully failed to pay for damage to their home resulting from a 1998 fire. Farmers obtained summary judgment by establishing that Mrs. Watts violated the policy's fraud provision by untruthfully answering questions posed by Farmers' investigators concerning previous fires and by submitting a claim for personal property which included numerous items damaged or destroyed in a 1995 fire and which conflicted with a written claim she had made in connection with the 1995 fire. Mr. Watts presented evidence that he was innocent of knowledge of any fraud, but Farmers persuaded the court that Mrs. Watts's misrepresentations freed it from its obligations to both parties because the property was held jointly as community property.

On appeal, Mrs. Watts contends that Farmers failed to show that the misrepresentations were material or that she had the necessary intent to defraud. Mr. Watts contends that he should not be precluded from recovery for his share of the damaged property merely because of his wife's actions. We agree with the trial court that materiality and intent were adequately shown with regard to Mrs. Watts. We disagree, however, that Mr. Watts is automatically precluded from all recovery due to the manner in which the property was held. We hold that under the language of the policy, Mr. Watts's rights were severable from his wife's and he may recover for his proportionate share of the damaged property as long as he was innocent of fraud.

In its brief, Farmers contends that the judgment against Mr. Watts can be affirmed on alternate grounds, pointing to evidence in the record to refute Mr. Watts's status as an innocent spouse. But we cannot decide a factual question of this nature as a matter of first impression on appeal when the evidence is conflicting. We, therefore, reverse the judgment entered against Mr. Watts and remand for further proceedings.

FACTUAL AND PROCEDURAL BACKGROUND

Appellants were owners of a house in Compton, which was insured by Farmers under a fire policy. The residence was damaged by fire in January 1998. At the time of the January 1998 fire, the house was vacant.[1] Appellants had moved out in 1995, after their daughter became a witness to a murder and the house became the object of drive-by shootings. A few days later, an incendiary device was thrown into the house. A claim based on the 1995 incident had been paid by the prior insurer, American Security Insurance Company.

---

[1] There was some evidence that appellants' son had lived in the house intermittently, but not around the time of the fire.

In response to their 1998 claim, Mrs. Watts was interviewed by a Farmers' investigator on February 26, 1998. Her statement under oath was taken on December 7, 1998. Appellants submitted a proof of loss form on September 29, 1998.[2] In April 1999, Farmers rejected their claim, stating in a letter: "As you are aware, the subject policy of insurance contains the following relevant language: [¶] '3. Concealment or Fraud. We do not provide coverage if you have intentionally concealed or misrepresented any material fact or circumstance relating to this insurance.' [¶] . . . It has been determined that the insured has violated the above policy language by concealing and/or misrepresenting material facts and/or circumstances." Farmers set forth the following specific instances of concealment or misrepresentation on the part of Mrs. Watts: (1) Farmers discovered that Mrs. Watts had pled guilty to arson in connection with a 1982 fire at the house, yet during the examination under oath, answered "I think so" when asked whether there had been only two fires at the property since 1968; (2) during questioning by the investigator, Mrs. Watts answered "No, ain't nobody did nothing to my house" when asked if there had been any fires at the property other than the January 1998 fire and the incident where someone threw an incendiary device at the house; (3) a number of items of personal property listed on the proof of loss form appeared to be identical to items previously identified as damaged or destroyed in connection with the 1995 incident.

*Appellants' Complaint and Farmers' Motion to Strike*

In September 1999, appellants brought suit against Farmers for breach of contract, breach of the covenant of good faith and fair dealing, and unfair business practices. The complaint alleged that appellants had paid premiums and performed all obligations due under the insurance policy, and that Farmers had breached by refusing to pay for the fire damage. In paragraph 21(d), appellants alleged that Farmers committed an unfair business practice by "fail[ing] to consider the interests of each of its insureds separately" and by "failure to follow rules established by California and common law that apply to an innocent co-insured[.]"

Farmers moved to strike various allegations of the complaint, including the allegations of paragraph 21(d). Farmers cited *Erlin-Lawler Enterprises, Inc. v. Fire Ins. Exch.* (1968) 267 Cal.App.2d 381 [73 Cal.Rptr. 182, 37 A.L.R.3d 1378], for the proposition that it did not need to consider the interests of each insured separately. The trial court granted that portion of the motion, ruling that "Farmers was not required to consider the interests of the insureds separately if the insured property was community property."

---

[2]Beginning in August 1998, appellants were represented by counsel.

Appellants filed an amended complaint, and Farmers answered, asserting as an affirmative defense that appellants "intentionally concealed or misrepresented material facts and/or circumstances relating to the insurance, including material facts/or circumstances relating to the subject claim, barring their recovery from [Farmers]."

*Farmers' Motion for Summary Judgment*

Farmers moved for summary judgment. It established as a matter of undisputed fact that there was an insurance policy in effect from December 5, 1997, to November 29, 1998; that the policy contained the above quoted provision precluding coverage if the insured had intentionally concealed or misrepresented any material fact relating to the insurance; and that appellants made a claim under the policy as a result of the January 1998 fire. Farmers sought to establish that appellants violated the concealment misrepresentation provision, and thereby justified its refusal to pay the claim. It showed that Mrs. Watts had made the statements referenced in its April 1999 letter. It established that a criminal complaint was filed against Mrs. Watts in 1982 for "willfully, unlawfully and maliciously set[ting] fire to and burn[ing] and caus[ing] to be burned an inhabited structure and inhabited property" referencing the house in Compton, which ultimately led to a sentence of probation being imposed on Mrs. Watts.

Farmers also sought to show misrepresentation with reference to specific items in appellants' damage claim. It did this by submitting a letter written by Mrs. Watts in which she listed the damage to the house and personal property, which resulted from the 1995 incident. The letter, which is undated but was apparently written in 1995, lists items damaged, destroyed, taken, or "toreup" as a result of that incident. It includes the following language: "[M]y white organ they toreup, couch & love seat, coffee tables, lamp, mirrors, TV, and VCR, & Stero [*sic*] record player, picturs [*sic*] everything they took"; "Kitchen: destroyed my refrigerator, and stove . . . ."; "All my carpet in the house was destroyed"; "all my cloths [*sic*] they took"; and "the damages . . . you can see for yourself all my belonging [*sic*] was destroyed[,] they through [*sic*] all my clothes on the floor and destroyed all of my property." Mrs. Watts testified at her deposition that she had sent the letter sometime after the 1995 incident to her mortgage company.

Farmers further established that appellants submitted a proof of loss form in September 1998 in which they sought $71,000 for the loss of the house and $10,000 for loss of personal property, including a "Coach [*sic*] & Chair Set" purchased in the late 1980's; a "Musical Organ" purchased in 1993; a stove purchased in the late 1980's; a refrigerator purchased around 1993;

three television sets purchased in 1976, 1990, and 1993; and "Clothes." The proof of loss was signed by both appellants.

In the interrogation under oath conducted by Farmers' counsel in December 1998, Mrs. Watts testified that part of the carpet in the front room was damaged in the 1995 incident, but the carpet in the two bedrooms was not and that it was in pretty good shape prior to the fire. She testified that she did not think the couch was damaged in the 1995 incident. She testified that she was positive the organ had not been damaged in the 1995 incident.[3] She testified that the refrigerator and stove were "in the kitchen" in September 1995, but was unclear about whether they were operable.

In opposition to the motion for summary judgment, appellants submitted portions of Mrs. Watts's interrogation under oath and deposition testimony in which she testified that she and her family left the house on September 4, 1995, after a drive-by shooting. The house was attacked by a firebomb or other type of incendiary device sometime thereafter. She wrote the 1995 letter herself from memory after a brief visit to the house to inspect the damage. Mr. Watts did not have any input into writing the letter.[4] As of the time of the statement under oath, Mrs. Watts did not believe that everything in the 1995 letter was accurate. She said the washer, dryer, stove, and refrigerator were damaged, but not destroyed, in the 1995 fire.

When asked about the 1982 arson conviction at her deposition taken in January and February 1999, Mrs. Watts denied setting fire to the house. She stated that she was angry with her husband and set his chair on fire. The fire spread and caused damage to the front room and curtains of the house. She called the fire department when she could not put the fire out herself, and admitted what she had done. This led to a criminal charge to which she pled guilty, but she did not understand that the charge was arson.

Appellants set forth additional facts, establishing that American Security had not paid the full amount of the 1995 claim. Appellants also submitted evidence indicating that Farmers suspected there had been previous fires at the residence from statements obtained from the fire department and other witnesses in February and March 1998. Appellants' claim was referred by Farmers to the Department of Insurance as a potential fraudulent claim in February or March 1998.

Appellants argued in opposition to the summary judgment motion that Farmers had not shown an actual intent to defraud or materiality and presented no evidence of fraud on the part of Mr. Watts.

[3] She later changed that testimony to "[i]t was damage [sic] but not destroyed."

[4] Mr. Watts denied having been inside the house at any time after the family moved out in 1995.

The trial court granted the motion for summary judgment. It stated that the misrepresentation regarding the 1982 fire and the submission of duplicate claims to American Security and Farmers were material as a matter of law. The court further ruled that the misrepresentations were made with knowledge of falsity, were a "proper and necessary part of Farmers' reasonable investigation," and were relied on by Farmers. Concerning intent, the court ruled that it was necessarily implied where the misrepresentation was material and willfully made with knowledge of falsity. It concluded that there was no need to consider the interests of Mr. Watts separately based on its earlier ruling on the motion to strike concerning community property, and stated that "[t]here is no evidence that the house is anything other than community property." Judgment was subsequently entered in favor of Farmers. This appeal followed.

## DISCUSSION

### I-III*

. . . . . . . . . . . . . . . . . . . . . . . . . .

### IV

■ The next issue is whether Mr. Watts is automatically precluded from obtaining any recovery because of his wife's misdeeds. Relying on *Erlin-Lawler Enterprises, Inc. v. Fire Ins. Exch.*, *supra*, 267 Cal.App.2d 381, Farmers argues that his interest did not need to be considered separately. This is incorrect.

*Erlin-Lawler* did not involve jointly held marital property. In *Erlin-Lawler*, property belonging to a closely held corporation was destroyed in a fire and an officer and shareholder, along with an ex-officer and ex-shareholder, were convicted of arson. The corporation sued the insurer to recover policy benefits. The trial court entered judgment in favor of the insurer based on the corporation being the alter ego of the two arsonists. On appeal, the corporation pointed out that the shareholder arsonist owned only 50 percent of the shares. The other 50 percent were owned by his ex-wife and the other arsonist's ex-wife as their separate property. The two women were officers and at least one of them took an active, full-time role in the operation of the corporation's business. Neither had any role in the arson. Finding no dispositive California law on the issue of whether a corporation could recover from its insurer under these circumstances, the appellate court conducted a lengthy review of the law in other jurisdictions and concluded there could be

---

*See footnote, *ante*, page 1246.

no bright-line rule: "From the cases decided in the other jurisdictions, the following basic rule may be deduced: The arsonist's status as an officer, stockholder, employee or agent of an insured corporation does not necessarily preclude the corporation from recovering upon the policy of insurance. The basic function of the court is to see that no one takes advantage of his own wrong. . . . An analysis must be made in each case to see if the arsonist will benefit by the recovery on the policy, either directly or indirectly." (*Erlin-Lawler Enterprises, Inc. v. Fire Ins. Exch., supra,* 267 Cal.App.2d at p. 385.) The court reversed the defense judgment and remanded the matter for findings on various factual matters such as whether the arsonist shareholder was in dominant control of the corporation, whether the cash used to set up the corporation came from separate property of the wives, whether the couples separated before or after the fire, etc. (*Id.* at pp. 387-388.)

In its discussion of the relevant authority, the court summarized its understanding of the rules governing recoverability by an innocent co-insured in other types of situations and relationships as follows: "Mere family relationship of the arsonist which does not bestow a property right or other direct financial benefit in the proceeds of insurance does not bar a recovery. [Citations.] But if the property insured is community property, an innocent wife cannot recover if her husband wilfully burned the property. (*California Ins. Co.* v. *Allen* (5th Cir. 1956) 235 F.2d 178, 179.) Even a divorce prior to the fire without a division of the community property does not alter this rule as to property presumptively community. (*Bridges* v. *Commercial Standard Ins. Co.* (Tex.Civ.App. 1952) 252 S.W.2d 511, 512.) Even an innocent joint tenant has been denied recovery where the fire is set by the other joint tenant. (*Klemens* v. *Badger Mut. Ins. Co.* (1959) 8 Wis.2d 565 [99 N.W.2d 865, 866].)" (*Erlin-Lawler Enterprises, Inc. v. Fire Ins. Exch., supra,* 267 Cal.App.2d at p. 386.)

Farmers contends that the above language represented an accurate statement of the law in California at the time and is still the law in California as it relates to co-insureds who hold property jointly or as a community. But, as can be seen, the court in *Erlin-Lawler* cited no California authority for the propositions set forth. Appellants accurately point out that the statements constituted dicta since the issue in *Erlin-Lawler* involved misfeasance by a corporate officer and shareholder and recovery for damage to corporate property. The statements concerning community property and joint tenancy merely represented a recitation of then recent authority in those areas from other jurisdictions.

Our research indicates that the trend noted in *Erlin-Lawler* has been reversed and currently favors permitting recovery by the innocent insured

party up to his or her percentage share of the value of the property unless the policy contains language which clearly excludes this possibility. Of the three cases cited by the court in *Erlin-Lawler*, all have been overruled explicitly or implicitly by the highest courts in the relevant jurisdictions. *Klemens v. Badger Mut. Ins. Co., supra*, 99 N.W.2d 865, was explicitly overruled by the Wisconsin Supreme Court in *Hedtcke v. Sentry Ins. Co.* (1982) 109 Wis.2d 461 [326 N.W.2d 727]. The issue in *Hedtcke* was whether an innocent wife could recover under a fire insurance policy if her husband, a named insured, intentionally caused the fire. Citing *Klemens* and other similar cases, the insurance company argued she could not recover because the property was jointly owned and jointly insured, although the couple was separated and in the process of divorce at the time of the fire. Comparing earlier Wisconsin decisions with more modern decisions from other jurisdictions such as Michigan,[8] Illinois[9] and New York,[10] the court concluded that "imputing the incendiary actions of an insured to the innocent insured and creating an absolute bar to recovery by the innocent insured, produces inequitable results" (*Hedtcke, supra*, 326 N.W.2d at p. 740), whereas "the modern rule adopted by courts in other jurisdictions permitting recovery by innocent insureds preserves the essence of the legal principles recognized in the [contrary Wisconsin] cases and produces an equitable result . . . ." (*Id.* at p. 738.)

The court in *Hedtcke* noted that *Klemens* and other similar cases were based on the " 'principle of fortuitousness,' " that is, "that insurance covers fortuitous losses and that losses are not fortuitous if the damage is intentionally caused by the insured." (*Hedtcke v. Sentry Ins. Co., supra*, 326 N.W.2d at p. 738.) Courts adopting the modern rule, on the other hand, "focus on the contract of insurance rather than the interests and obligations arising from the nature of the property ownership. In *Klemens* this court concluded without analysis that if there are several insureds, the joint nature of the insurance contract gives rise to joint interests and obligations on the part of each policyholder. The courts following the modern rule discard this conclusory maxim and turn instead to the language of the policy to determine whether the rights of the insureds are joint or several." (*Id.* at pp. 738-739, fn. omitted.) The Wisconsin Supreme Court cited an Indiana case which noted that the " 'legal fiction of the entireties' estate in real estate is designed for the protection of the spouses and the marriage' " and found it " 'a perversion of this legal fiction . . . to use it to destroy the property rights of an innocent spouse.' " (*Id.* at p. 739, fn. 9, quoting *American*

---

[8]*Morgan v. Cincinnati Ins. Co.* (1981) 411 Mich. 267 [307 N.W.2d 53].

[9]*Economy Fire and Casualty Co. v. Warren* (1979) 71 Ill.App.3d 625 [28 Ill.Dec. 194, 390 N.E.2d 361].

[10]*Winter v. Aetna Casualty and Surety Co.* (1978) 96 Misc.2d 497 [409 N.Y.S.2d 85].

*Economy Ins. Co. v. Liggett* (Ind.Ct.App. 1981) 426 N.E.2d 136, 140.) It also relied on a New Hampshire case which justified its conclusion "by noting that one who owns an undivided interest in property may insure his or her interest under a separate insurance policy or under a joint policy with the other co-owners" and that "arson perpetrated by one owner would not influence the right of the innocent owner to recover under his or her own separate policy . . . ." (*Hedtcke,* at p. 739, citing *Hoyt v. New Hampshire Fire Ins. Co.* (1942) 92 N.H. 242 [29 A.2d 121, 148 A.L.R. 484].)

The court in *Hedtcke* was persuaded that nothing in the language of the policy before it precluded treating the two insureds as if they had separately insured their respective interests in the property even though the property was jointly held as a single unit. The policy contained a standard provision absolving the insurer of liability for damage if it was " 'caused, directly or indirectly, by . . . neglect of the insured to use all reasonable means to save and preserve the property at and after a loss' " or if " 'the hazard is increased by any means within the control or knowledge of the insured[.]' " (*Hedtcke v. Sentry Ins. Co., supra,* 326 N.W.2d at p. 736, fns. omitted.) This language did not make clear "whether the obligations of the insured are joint or several." (*Id.* at p. 740.) Accordingly, the court concluded the language was ambiguous and interpreted the policy "as not barring an innocent insured from recovering under the policy merely by virtue of the fact that another insured intentionally caused the damage to the insured property." (*Ibid.*)

The other two cases cited in *Erlin-Lawler*—*California Ins. Co. v. Allen, supra,* 235 F.2d 178, and *Bridges v. Commercial Standard Ins. Co., supra,* 252 S.W.2d 511—were decided under Texas law. In 1986, in *Kulubis v. Texas Farm Bureau Underwriters* (Tex. 1986) 706 S.W.2d 953, the Texas Supreme Court overruled *Jones v. Fidelity & Guaranty Ins. Corp.* (Tex.Civ.App. 1952) 250 S.W.2d 281, the case which formed the basis for the two Texas cases cited. *Kulubis* involved a woman who had filed for divorce and whose mobilehome and personal property, jointly owned with her husband, were lost when her husband spitefully set fire to the home, destroying it and all its contents. Mrs. Kulubis asked the Texas Supreme Court to reconsider *Jones* and its progeny, and the court agreed to do so. As the court explained: "The *Jones* decision was based upon a holding that co-insureds under an insurance policy covering jointly owned property acquire joint rights and obligations under the policy. Therefore, the illegal acts of one of the co-insureds prevent recovery by the other co-insured. At the time this court adopted the *Jones* rule it was the traditional rule in the United States. . . . [¶] In 1942, the New Hampshire Supreme Court first permitted recovery by a co-insured in Betty Kulubis' position. *Hoyt v. New Hampshire Fire Insurance Co.,* 29 A.2d 121, 92 N.H. 242[, *supra*]. That

court reasoned that the proper test to be applied was what a reasonable person would have understood the fire insurance policy to mean. The court then held that an innocent victim of a co-insured's illegal act in destroying the jointly owned property would reasonably expect to be covered by the policy. [¶] Between 1974 and 1985, sixteen other states adopted the test set out in *Hoyt*. We note that of the four jurisdictions relied on in *Jones*, two of them have adopted the test in *Hoyt*, and a third, Pennsylvania, has questioned the rule." (*Kulubis v. Texas Farm Bureau Underwriters, supra,* at pp. 954-955, fn. omitted.)[11]

The Texas court looked at the policies behind the different approaches. The basis for the traditional rule "was that fraudulent losses are generally excepted from coverage of fire insurance contracts upon the ground of public policy and morals. [Citation.] Put another way, public policy dictates that a wrongdoer should not benefit from his wrongdoing." (*Kulubis v. Texas Farm Bureau Underwriters, supra,* 706 S.W.2d at p. 955.) The policy behind the modern trend "requires that an innocent co-insured be permitted to recover based upon the insured's reasonable expectations." (*Ibid.*) The modern rule benefits the public good by "not punishing the innocent victim for the wrongs of another" and "prevent[ing] unjust enrichment by the insurance company . . . ."[12] (*Kulubis,* at p. 955.) After consideration of the competing policies, the court held that "the more enlightened reasoning dictates that the illegal destruction of jointly owned property by one co-insured shall not bar recovery under an insurance policy by an innocent co-insured." (*Ibid.*)

Because the Kulubis's property was not community property, the court left for another day "the problem of how to compensate the innocent spouse and yet not permit benefit to the wrongdoing spouse" where the damage occurred to community property. (*Kulubis v. Texas Farm Bureau Underwriters, supra,* 706 S.W.2d at p. 955.) That day came in 1999, in *Texas Farmers Ins. Co. v. Murphy* (Tex. 1999) 996 S.W.2d 873. The factual situation in *Murphy* was similar to the situation in *Kulubis*: Mr. Murphy set fire to the house owned by him and his wife, burning it and all its contents. Mrs. Murphy was found to be innocent of prior knowledge or complicity. The

---

[11]In 1994, the Pennsylvania Supreme Court clarified that "whether the named insureds are tenants by the entireties, tenants in common, or otherwise, is of no real significance to the resolution of [whether an innocent co-insured will be allowed to recover under an insurance policy after another co-insured has intentionally destroyed the insured property]." (*McAllister v. Millville Mut. Ins. Co.* (1994) 433 Pa.Super. 330 [640 A.2d 1283, 1287].) If the policy does not unequivocally make clear that the interests and obligations of the named insureds are joint and several, "the court must interpret the ambiguity in favor of the insureds and find the obligations of the insureds under that particular exclusion to be **several** or **separate**." (*Id.* at p. 1287.)

[12]Unjust enrichment occurs because the insurance company retains the premiums paid over the years, yet is relieved of its obligation to pay for the loss.

significant differences were that the destroyed property was held as community property, and no petition for divorce had been filed until after the lawsuit against the insurer was instituted. The court recognized that a rule permitting the innocent spouse to recover as long as there was a divorce proceeding going forward or a partition agreement in effect would make sense, but was troubled by the prospect that this could encourage married couples to divorce. (*Murphy,* at p. 877.) Equally troubling was the prospect that such actions would be undertaken in bad faith where the couple planned to get back together after recouping their losses. (*Ibid.*)

In the end, the court concluded that "a rule conditioning an innocent spouse's recovery on partition or divorce is neither practical nor satisfactory. . . . [¶] It is not the courts' business to superintend what innocent co-insureds may do with any insurance proceeds they are contractually entitled to recover. Nor, under these circumstances, is it the courts' province to regulate an innocent spouse's marital relationship with the culpable spouse. The preferable rule is to allow innocent spouses to recover according to their contracts, regardless of partition or divorce. [¶] We reaffirm our longstanding public policy preventing an arsonist from benefitting from fraud by denying recovery of his or her own one-half interest in the claim against the insurer. We conclude, however, that such public policy does not overcome an innocent spouse's contractual right to recover her or his one-half interest in the policy benefits." (*Texas Farmers Ins. Co. v. Murphy, supra,* 996 S.W.2d at p. 881.)

Our research indicates that nearly every court which has looked at this issue in recent years has agreed with the Texas and Wisconsin Supreme Courts that the manner in which the property is held should have no significance and that, instead, the language of the policy is determinative of whether the innocent spouse will be allowed recovery. (See, e.g., *Atlas Assur. Co. of America v. Mistic* (Alaska 1991) 822 P.2d 897, 900 [following rule that "allows an innocent or divorced spouse to recover even though the co-insured spouse is at fault" under the reasoning that "policy language excluding coverage must be explicit"; that "what is in question is the spouse's interest in the insurance policy, not the interest in the real property"; and that "the fault of the wrongdoing spouse cannot be imputed to the innocent spouse"]; *Overton v. Progressive Ins. Co.* (Fla.Dist.Ct.App. 1991) 585 So.2d 445, 447, fn. 1 ["Recovery under the new dominant rule . . . is grounded on the fact that the contract rights and the fraud liability are deemed to be divisible regardless of the nature of the property interests."]; *Richards v. Hanover Ins. Co.* (1983) 250 Ga. 613 [299 S.E.2d 561, 563] ["Recently . . . an increasing number of courts have focused their analysis not on the joint or individual nature of the underlying property right, but on

the rights and duties embodied in the language of the contract of insurance. . . . [¶] We, too, look to the rules of contract to resolve the present dispute. In Georgia, insurance is a matter of contract, and the parties to an insurance policy are bound by its plain and unambiguous terms."]; *Ryan v. MFA Mut. Ins. Co.* (Tenn.Ct.App. 1980) 610 S.W.2d 428, 437 [holding that the "new majority" rule was "better reasoned" and "produce[d] a more equitable result" and that if the insurer "wanted to assure its position, i.e. that misconduct of any insured would bar recovery by other insured," it should have "made it clear and unambiguous in the policy" and "informed the prospective applicants for insurance of this position from the start"]; *Morgan v. Cincinnati Ins. Co., supra,* 307 N.W.2d 53, 55 ["Henceforth whenever the statutory clause limiting the insurer's liability in case of fraud by the insured is used it will be read to bar only the claim of an insured who has committed the fraud and will not be read to bar the claim of any insured under the policy who is innocent of fraud."]; *Steigler v. Insurance Co. of North America* (Del. 1978) 384 A.2d 398, 402 ["Our construction and application of the contract rights of the parties thus leads us to agree with [the case] which seems to us to represent both a more modern analysis of the problem and to produce a fairer result."]; *Hildebrand v. Holyoke Mut. Fire Ins. Co.* (Me. 1978) 386 A.2d 329, 331, quoting *Howell v. Ohio Casualty Ins. Co.* (1974) 130 N.J.Super. 350 [327 A.2d 240, 242] [holding that irrespective of whether the interests of the plaintiff and her husband in the destroyed property are deemed to be joint or several, " '[t]he significant factor is that the responsibility or liability for the fraud here, the arson is several and separate rather than joint, and the husband's fraud cannot be attributed or imputed to the wife who is not implicated therein' "].)

Focusing on how differences in the language of the policy's provisions can impact an innocent spouse's right to recover, one commentator has summarized the new majority rule as follows: "Generally, where a policy precludes recovery as a result of fraud on the part of *'the'* insured, the recovery is precluded only as to the insured who committed the fraud and the innocent co-insured is allowed to recover. On the other hand, where a policy precludes recovery as a result of fraud on the part of *'any'* insured, the effect of the fraudulent acts of one insured preclude recovery as to all insureds and an innocent co-insured is thereby precluded from recovery." (13 Couch on Insurance (3d ed. 1999) § 197:34, p. 197-65, italics added, fn. omitted.) For example, in *Hildebrand v. Holyoke Mut. Fire Ins. Co., supra,* 386 A.2d 329, where the fraud provision stated: " 'This entire policy shall be void if, whether before or after a loss, the insured has willfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the insured therein, or in case of any fraud or false swearing by the insured relating thereto,' " the court explained

that the language did not preclude the innocent wife from recovering despite the wrongdoing of her husband: "We construe the term 'insured' in the . . . above quoted clause of the policy to mean a specific insured, namely, the insured who (1) is responsible for causing the loss and (2) is seeking to recover under the policy. [Citation.] We therefore conclude that the instant policy allows recovery by the 'Named Insured' [the wife] for the loss despite the fact that it resulted from the intentional act of another 'insured.' [Citation.]" (*Id.* at p. 331, italics omitted; accord, *Richards v. Hanover Ins. Co., supra,* 299 S.E.2d at pp. 563-564 [where policy designated husband and wife as the " 'named insured,' " and further provides for an exclusion from liability in the event of " 'neglect of the *insured* to use all reasonable means to save and preserve property . . . ,' " the court concluded that it was "reasonable that a person in [the wife's] position reading this homeowners policy would assume that the obligation to preserve the insured property devolved upon her individually as an 'insured' under the policy, and that the term 'insured' as used in the neglect provision referred to the individual co-insured who fails to preserve the insured property"]; *Ryan v. MFA Mut. Ins. Co., supra,* 610 S.W.2d at pp. 437, 440 [where policy contained standard provision stating " '[t]his entire policy shall be void if, whether before or after a loss, the insured has wilfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the insured therein, or in case of any fraud or false swearing by the insured relating thereto," court held that "a reasonable person, reading the provisions in the policy, . . . which refer to fraud of 'the insured,' and neglect of 'the insured, etc. would conclude that if an insured was guilty of fraud or neglect or increasing of hazard to property, then he or she may not recover under the policy"]; *Morgan v. Cincinnati Ins. Co., supra,* 307 N.W.2d at p. 54 [where policy stated in accordance with standard form that " '[t]his entire policy shall be void if, whether before or after a loss, the insured has wilfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the insured therein, or in case of any fraud or false swearing by the insured relating thereto,' " court refused insurer's request to read the provision as if it stated " '[t]his entire policy shall be void if . . . any person insured' has committed fraud" because court believed "such a reading [was] unwarranted," and that "the provision voiding the policy in the event of fraud by 'the insured' is to be read as having application only to the insured who committed the fraud and makes claim under the policy"]; *Steigler v. Insurance Co. of North America, supra,* 384 A.2d at pp. 399, 401 [where fraud provision stated " '[t]his entire policy shall be void . . . in case of any fraud . . . by the insured relating thereto' " court held that "[wife] should not be barred from recovering under the policy by the fraud of the [husband]"]; see *McAllister v. Millville Mut. Ins. Co., supra,* 640 A.2d at p.

1289 [where the policy provided that the insurer would not pay for loss resulting from neglect by " 'any insured' " or from the intentional acts of " 'an insured,' " court held that "[t]he use of the terms 'any' and 'an' in the exclusions clearly indicate that the insureds' obligations under the policy's neglect and intentional provisions are joint, not several" and intentional acts by one insured bar recovery by the others]; *Webb v. American Family Mut. Ins. Co.* (Iowa 1992) 493 N.W.2d 808, 812 [holding that policy reference to "an insured" in fraud provision unambiguously excluded coverage to both spouses if either insured committed fraud].)

We, too, believe that conditioning an innocent spouse's ability to recover insurance benefits on the manner in which title to damaged property is held makes little sense, and see no reason why we should follow an approach deemed outmoded and unnecessarily harsh by nearly every other jurisdiction in the United States. Community property laws exist to protect the innocent spouse from losing his or her rights due to the individual misdeeds of the other spouse. They should not be used as a weapon by an insurance company to reap a windfall where one spouse, acting alone, has violated the terms of the policy and the policy does not explicitly warn that this will be the outcome. A rule automatically precluding recovery for community property and joint tenancies, but permitting recovery when the subject property happens to be held separately, seems to bear no rational relationship to the expectations of the parties or the risks involved. We, therefore, agree with the modern majority that an innocent spouse's ability to recover should be based on the language of the policy rather than the type of property involved.

Here, the policy stated: "We do not provide coverage if you have intentionally concealed or misrepresented any material fact or circumstance relating to this insurance." The same language was at issue in *Atlas Assur. Co. of America v. Mistic, supra*, 822 P.2d 897, where the court found that the policy did not clearly preclude recovery to an innocent insured if another co-insured wrongfully caused the loss. (*Id.* at p. 900; cf. *Amick v. State Farm Fire and Cas. Co.* (8th Cir. 1988) 862 F.2d 704, 706 and *Reitzner v. State Farm Fire & Cas. Co.* (Minn.Ct.App. 1993) 510 N.W.2d 20, 24 [where policy excluded coverage for intentional or fraudulent acts of " 'you *or any other insured*' " (italics added) policy was not ambiguous and prevented recovery by innocent spouse].)

Moreover, as we have said, the language of the California standard form policy, which should be read into the policy, provides: "This entire policy shall be void if, whether before or after a loss, the insured has willfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the insured therein, or

in case of any fraud or false swearing by the insured relating thereto." (Ins. Code, § 2071, subd. (a).) As indicated above, identical language was reviewed by the courts in *Hildebrand v. Holyoke Mut. Fire Ins. Co., supra,* 386 A.2d 329, *Morgan v. Cincinnati Ins. Co., supra,* 307 N.W.2d 53, and *Ryan v. MFA Mut. Ins. Co., supra,* 610 S.W.2d at page 440.[13] Each of these courts concluded that the use of the term "the insured" means that the acts of each insured must be considered separately, and the penalty—loss of insurance benefits—applied only to the guilty insured who committed fraud or misrepresentation. We agree that since the language adopted by the Legislature for the standard form does not specifically state that the act of any insured will be attributed to all insureds, the intent is that coverage be severable and that an innocent co-insured be able to recover for his or her proportionate share of the damaged property.

Farmers insists on appeal that Mr. Watts was not an innocent co-insured, pointing to the fact that he signed the 1998 proof of loss form. In its initial memorandum in support of the summary judgment motion, Farmers argued that the misrepresentations made in the proof of loss "were made with knowledge of their falsity because obviously [appellants] knew that they had submitted a handwritten letter to their previous insurer stating that most of the same property had been damaged and/or destroyed in the September 1995 Incident." Appellants established in their opposition that although she signed the 1995 letter "Mae and Bobby Watts," Mrs. Watts wrote the letter on her own without the input or knowledge of Mr. Watts. Moreover, unlike Mrs. Watts, Mr. Watts never testified that he knew items listed on the 1998 proof of loss form had previously been damaged or destroyed in the 1995 fire. According to his testimony, he had not been inside the house since the move precipitated by the drive-by shootings, which predated the 1995 fire.

Confronted with appellants' opposition, Farmers argued to the trial court in its reply that appellants' argument "that the [summary judgment] Motion should be denied with respect to [Mr. Watts], because there is no evidence of his concealment and/or fraud" should be disregarded because "[appellants] made such an allegation in the Original Complaint, and it was stricken by the Court on FARMERS' Motion to Strike" thus becoming "law of the case." As we have seen, the court granted the motion to strike and the summary judgment with respect to Mr. Watts's claim because of its belief that

---

[13]See also discussion of *Kulubis v. Texas Farm Bureau Underwriters, supra,* 706 S.W.2d 953, in *Texas Farmers Ins. Co. v. Murphy, supra,* 996 S.W.2d at page 876, footnote 6 ("Although not quoted in the opinion, the only clause in the Kulubis insurance policy that could have arguably barred [Mrs. Kulubis's] recovery . . . was a concealment clause stating that '[t]his entire policy shall be void if, whether before or after a loss, *the* insured has wilfully concealed or misrepresented any material fact or circumstance concerning this insurance, or the subject thereof . . . .' ").

*Erlin-Lawler* automatically precluded recovery by an innocent co-insured where the property was held jointly. This belief was erroneous for the reasons we have discussed. On the record presented, it cannot be said with the certainty needed for summary adjudication that Mr. Watts personally engaged in a knowing and willful false swearing when he signed the 1998 proof of loss form.[14]

## DISPOSITION

The judgment in favor of Farmers is affirmed as to Mrs. Watts and reversed as to Mr. Watts. The matter is remanded for a determination of whether Mr. Watts was an innocent spouse entitled to recover based on his one-half interest in the damaged property. Appellants shall recover costs on appeal.

Epstein, Acting P. J., and Hastings, J., concurred.

---

[14]At oral argument, Farmers urged us to affirm on the ground that Mr. Watts *should have known* that the items listed in the proof of loss form had been the subject of a previous damage claim. It presented no rationale for why that knowledge must be attributed to him. This issue, along with the issue of whether Mr. Watts had actual knowledge, can be litigated on remand.