Nadine **ICENHOUR** and Geraldine **Robinson, Plaintiffs,**

v.

**CONTINENTAL INSURANCE COMPANY aka Encompass Insurance, Defendant,**

**Teresa Icenhour, Plaintiff,**

v.

**Continental Insurance Company aka Encompass Insurance, Defendant.**

Civ.A. Nos. 2:01–0807, 2:01–0806.

United States District Court, S.D. West Virginia, at Charleston.

Oct. 14, 2004.

Erwin L. Conrad, Conrad Law Offices, Fayetteville, WV, Brian A. Glasser, Bailey & Glasser, Charleston, WV, for Plaintiffs.

John K. McHugh, Pamela C. Deem, Rebecca A. Betts, Allen Guthrie McHugh & Thomas, Charleston, WV, Maureen C. Middleman, Samuel H., Maureen C. Middleman, Weber Goldstein Greenberg & Gallagher, Pittsburgh, PA, for Defendant.

## ORDER

COPENHAVER, District Judge.

Pending before the court are the defendant's motion for partial summary judgment, filed July 3, 2002, and plaintiff Teresa Icenhour's motion for partial summary judgment filed July 17, 2002.

### I. Factual Background

In February 1987, Michael Icenhour and plaintiff Teresa Icenhour, his wife, purchased a home. (Stip. at 4.) The Icenhours resided together, along with their two young children, (T. Icenhour's Mot. Summ. J., ex. A at unnumbered page 1.) On May 28, 1991, the home was transferred to plaintiffs Geraldine Robinson and Nadine Icenhour, the respective mothers of Teresa and Michael. (Stip. at 4.) The Icenhours, however, continued to live in the home.

Teresa Icenhour asserts she was the victim of long-term, domestic abuse by her husband. (*Id.* at 7; T. Icenhour's Mot. Summ. J., ex. A at unnumbered page 2.) Ms. Icenhour had previously secured re-

straining orders against her husband, asserting he "beat[ ] on" her and had been doing so for approximately eighteen years. (*Id.*) Ms. Icenhour asserts her husband "made repeated threats to [her] that he would burn the house before he would let her have it ...." (*Id.* at 9.) He also warned her "if he ever caught her with another man he would kill her[.]" (*Id.*)

On April 27, 2000, Ms. Icenhour left for an overnight trip with her brother and sister-in-law. (*Id.* at 8.) Prior to leaving, Teresa was confronted by her husband, who stated he would burn the family home if she took the trip. (*Id.* at 9.) At that time, Michael was under a domestic violence protection order and not residing in the home. (*Id.* at 6, 15.) Following the discussion with her husband, Ms. Icenhour left on the trip. (*Id.* at 8.) while away, she received a phone call in the middle of the night from her cousin informing her the family home was ablaze. (*Id.* at 5.) The fire was ultimately ruled an arson. (*Id.* at 2.)

At the time of the fire, the home and its contents were insured under a policy ("the policy") with defendant. (*Id.* at 1.) The policy contains the following exclusion:

> We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.
>
> ....
>
> d. Involving intentional or criminal acts of or at the direction of one or more covered persons, if the loss that occurs:
>
> (1) May reasonably be expected to result from such acts; or

(2) Is the intended result of such acts.

(Pol'y at 12.) A "covered person" is defined in the policy as "you and the following residents of your household: ... Your family members ...." (*Id.* at 1.) [1]

Plaintiffs applied for the policy proceeds following the fire.[2] (*Id.* at 2.) Coverage was denied, *inter alia,* based upon the intentional acts exclusion. (*Id.*)

## II. Procedural Posture

On September 4, 2001, defendant removed a civil action instituted by Ms. Icenhour in the circuit court of Mingo County. The complaint asserted a breach of contract claim arising out of defendant's failure to pay the policy proceeds. The complaint also asserted a claim pursuant to the Unfair Trade Practices Act, West Virginia Code sections 33–11–1 to 10. The same day, defendant removed a civil action with similar claims from the same court. The second action had previously been instituted by Nadine Icenhour and Geraldine Robinson.

On June 14, 2002, the court denied a motion for summary judgment filed by Nadine Icenhour and Geraldine Robinson. *Icenhour v. Continental Ins. Co.,* No. 2:01–0807 (S.D.W.Va. June 14, 2002). The court ruled upon five contested matters as follows: (1) that plaintiffs were "covered persons" under the policy, *id.* at 13, (2) that the term "additional insured" was not ambiguous, *id.,* (3) that the policy exclusion for intentional acts, such as arson, was unambiguous and operated to exclude coverage for the loss, *id.* at 14, (4) that the policy constituted a single contract with all four of the insureds, *id.* at 15, and (5) that

---

1. The court previously ruled Nadine Icenhour and Geraldine Robinson, as additional insureds, were properly classified as "covered person[s]" under the policy along with the Icenhours.

2. It appears Teresa seeks to recover for the personal property located in the residence at the time of the fire. Nadine Icenhour and Geraldine Robinson, as record owners, seek recovery for damage to the real property and improvements.

an analysis of the insureds' reasonable expectations was inappropriate in light of the unambiguous nature of the applicable policy provisions, *id.* The court also concluded genuine issues of material fact remained on the issue of whether Nadine Icenhour and Geraldine Robinson maintained an insurable interest in the property. (*Id.* at 9.)

Subsequent to the June 14, 2002, order, the court entertained the instant briefing on the issues of plaintiffs' insurable interest and the applicability of an innocent insured defense to the coverage denial. Having reviewed the briefing, the court adheres to the rulings made in the June 14, 2002, order. Further discussion is required, however, relating to plaintiffs' entitlement to the insurance proceeds if they each qualify as innocent insureds relating to the arson. Specifically, plaintiffs contend they are blameless for any wrongdoing relating to the arson and that under such circumstances the policy exclusion is unenforceable as inconsistent with the West Virginia standard fire policy.

## III. Discussion

### A. Summary Judgment Standard

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Material facts are those necessary to establish the elements of a party's cause of action. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. *Id.* The moving party has the burden of showing—"that is, pointing out to the district court—that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the movant satisfies this burden, then the non-movant must set forth specific facts as would be admissible in evidence that demonstrate the existence of a genuine issue of fact for trial. Fed.R.Civ.P. 56(c); *Id.* at 322–23, 106 S.Ct. 2548. A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-moving party. *Williams v. Griffin,* 952 F.2d 820, 823 (4th Cir.1991).

Conversely, summary judgment is not appropriate if the evidence is sufficient for a reasonable fact-finder to return a verdict in favor of the non-moving party. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. Even if there is no dispute as to the evidentiary facts, summary judgment is also not appropriate where the ultimate factual conclusions to be drawn are in dispute. *Overstreet v. Kentucky Cent. Life Ins. Co.,* 950 F.2d 931, 937 (4th Cir.1991).

In reviewing the evidence, a court must neither resolve disputed facts or weigh the evidence, *Russell v. Microdyne Corp.,* 65 F.3d 1229, 1239 (4th Cir.1995), nor make determinations of credibility. *Sosebee v. Murphy,* 797 F.2d 179, 182 (4th Cir.1986). Rather, the party opposing the motion is entitled to have his or her version of the facts accepted as true and, moreover, to have all internal conflicts resolved in his or her favor. *Charbonnages de France v. Smith,* 597 F.2d 406, 414 (4th Cir.1979). Inferences that are "drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962).

## B. The *Erie* Framework

Our court of appeals has summarized the controlling principles for a federal court tasked with predicting uncertain state law in the context of a diversity case:

> As a court sitting in diversity, we have an obligation to interpret the law in accordance with the ... [decisions of the state court of last resort], or where the law is unclear, as it appears that ... [such court] would rule. *See Liberty Mut. Ins. Co. v. Triangle Indus.*, 957 F.2d 1153, 1156 (4th Cir.1992) (holding that if state law is unclear federal courts must predict the decision of the state's highest court); *Brendle v. General Tire & Rubber Co.*, 505 F.2d 243, 245 (4th Cir.1974). To forecast a decision of the state's highest court we can consider, *inter alia:* canons of construction, restatements of the law, treatises, recent pronouncements of general rules or policies by the state's highest court, well considered dicta, and the state's trial court decisions. *See Liberty Mut.*, 957 F.2d at 1156.

*Wells v. Liddy*, 186 F.3d 505, 527–28 (4th Cir.1999); *Castillo v. Emergency Medicine Associates, P.A.*, 372 F.3d 643, 648 (4th Cir.2004) ("When there is no decision by the highest state court, a federal court must apply what [it] find[s] to be the state law after giving proper regard to relevant rulings of other courts of the State.") (quoting *Barnes v. Thompson*, 58 F.3d 971, 982 (4th Cir.1995)(internal quotation omitted)).

## C. The West Virginia Standard Fire Policy and Innocent Co–Insureds

As noted by a well-respected insurance commentator, the permissible terms in fire insurance policies are governed by statute in the majority of states:

> In many jurisdictions, fire insurance has been defined by statute, and, in addition, most jurisdictions have enacted a "standard fire policy," which prescribes the terms to be included.
>
> . . . .
>
> Many states have enacted the 1943 New York Standard Fire Insurance Policy, or a standard that closely resembles it.

10 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* § 149:3 (3rd ed.2004).

West Virginia first adopted a standard fire insurance policy in 1907. 1907 W. Va. Acts 313. A subsequent version was adopted in 1923.1923 W. Va. Acts 64. The present version, adopted by the Legislature in 1957, requires use of the 1943 New York Standard Fire Insurance Policy. W. Va.Code § 33–17–2. Although the 1943 New York Standard Fire Insurance Policy is used verbatim in West Virginia. the Legislature has nonetheless referred to the document as the West Virginia Standard Fire Policy (the "Standard Policy"). *Id.* Section 33–17–2 provides in pertinent part:

> No policy of fire insurance covering property located in West Virginia shall be made, issued or delivered unless it conforms as to all provisions and the sequence thereof with the basic policy commonly known as the New York standard fire policy, edition of one thousand nine hundred forty-three, which is designated as the West Virginia standard fire policy; *except that with regard to multiple line coverages providing casualty insurance combined with fire insurance this section shall not apply if the policy contains, with respect to the fire portion thereof, language at least as favorable to the insured as the applicable portions of the standard fire policy* and such multiple line policy has been approved by the commissioner. . . .

W. Va.Code § 33–17–2 (emphasis added).

Like many states, the Standard Policy contains an exclusion relating to increased

hazards by an insured that provides as follows:

> Unless otherwise provided in writing added hereto this Company shall not be liable for loss occurring (a) while the hazard is increased by any means within the control or knowledge of *the insured* . . . .

(Std. Pol'y at lines 28–32 (emphasis added).) This same exclusion has appeared in the Standard Policy since at least its amendment in 1923. 1923 W. Va. Acts 64, 66.

■ The Icenhour policy is a package of coverages ranging from casualty to fire protection. Accordingly, it is properly characterized as a "multiple line" policy under section 33–17–2. *See* (Pol'y at 6;) *Sizemore v. State Farm General Ins. Co.*, 202 W.Va. 591, 593, 505 S.E.2d 654, 656 (1998). As a "multiple line" coverage document, the policy's fire protection component must be "at least as favorable to the insured as the applicable portions of the standard fire policy . . . ." W. Va.Code § 33–17–2; syl. pt. 1, *Sizemore v. State Farm General Ins. Co.*, 202 W.Va. 591, 592, 505 S.E.2d 654, 655 (1998).

■ Inasmuch as the statute requires the comparison, the court must examine whether the policy's intentional acts exclusion is at least as favorable to the plaintiffs as the applicable portion of the Standard Policy. The material portion of plaintiffs' policy's exclusion provides: "We do not insure for loss caused directly or indirectly by . . . intentional . . . acts of or at the direction of *one or more covered persons* . . . ." (Pol'y at 12 (emphasis added).) A "covered person" is defined as "you and the following residents of your household: . . . Your family members . . . ." (Pol'y at 1.)

As the court observed in its June 14, 2002, order, "if *a* covered person causes a loss to insured property by an intentional act, then Continental does not insure the loss." (Order at 14) (emphasis added.) In sum, the policy language avoids coverage if any insured person intentionally causes the loss.[3]

In comparison, the Standard Policy's exclusion for intentional loss provides in relevant part: "this Company shall not be liable for loss occurring . . . while the hazard is increased by any means within the control or knowledge of *the insured* . . . ." (Std. Pol'y at lines 28–32 (emphasis added).) The question thus arises whether the plaintiffs' policy, which excludes coverage for loss caused intentionally by *any* insured, is at least as favorable to plaintiffs as the Standard Policy's limitation of coverage when "*the* insured" engages in prohibited, hazard-increasing activities.

■ Turning first to the law of the forum state, this precise issue has never been addressed by the Supreme Court of Appeals of West Virginia. Inasmuch as there is no controlling authority, the court must forecast how the supreme court of appeals would treat the exclusion at issue in this case vis-a-vis the Standard Policy. There is a substantial indication, albeit

---

**3.** As noted by several courts, the court's prior analysis of the policy language was but step one of a two-step process:

> The analysis necessary to determine whether Marco's loss is covered under Trinity's insurance policy is two-fold. First, courts consider whether the language of Trinity's policy excludes coverage for an innocent co-insured. Second, in states with statutory standard fire policies, such as Idaho has adopted in I.C. § 41–2401, *even if the policy*

> *language excludes coverage, courts consider whether the policy provides the coverage required by the standard fire policy.*
>
> *Trinity Universal Ins. Co. v. Kirsling*, 139 Idaho 89, 73 P.3d 102, 104 (2003)(emphasis added); *see also, e.g., Watson v. United Servs. Auto. Ass'n*, 566 N.W.2d 683, 688 (Minn. 1997). The second prong of the analysis, the policy provision's consistency with the Standard Policy, is the subject of this Order.

somewhat dated, suggesting the supreme court of appeals would treat innocent co-insured parties differently from culpable insureds for coverage purposes.

In *Hawkins v. Glens Falls Ins. Co.*, 115 W.Va. 618, 177 S.E. 442, 447 (1934), the West Virginia court was faced with a couple attempting to recover insurance proceeds after their son burned down their business. The question of "incendiarism by an agent" was squarely confronted in the case. *Id.* at 628, 177 S.E. at 446.

In recasting the circuit court's instruction to the jury, which the supreme court of appeals concluded was correctly given, Justice Kenna observed for the unanimous panel that to deny recovery, the arson must have been "done at *plaintiffs'* instance or with *their* knowledge, consent or connivance." *Id.* (emphasis added). It thus appears the supreme court of appeals viewed the insureds from a several, rather than a joint, perspective, indicating that both insureds must have known or consented to the son's illegal acts in order for recovery to have been barred. It is also notable that the circuit court refused the insurance company's instruction, which provided that the arson by the son/agent automatically precluded the parent policyholders' recovery even if they lacked knowledge of his unlawful plans. *Id.*

The supreme court of appeals further observed as follows:

> Although the statement is undoubtedly based upon slender authority, because of the extremely limited number of cases in which the question has been directly presented as a matter of law, *we believe that the general statement of the law contained in 14 Ruling Case Law, page 1223, is sound.* We quote it: "If, however, the insured was insane when he destroyed the property, a recovery may be had, and *the fact that the property*

> *was intentionally burned by the insured's husband, wife or agent does not defeat a recovery, where the insured was not a party thereto."*

*Id.* at 629, 177 S.E. 442 (emphasis added).

The *Hawkins* opinion does not discuss the applicable policy language. An examination of such language, however, might aid further case analysis for *Erie* purposes. For instance, if the same increased-hazard exclusion that now appears in the Standard Policy likewise appeared in the Hawkins' policy, the case would provide at least some authority that the phrase "the insured" should be read as imposing several, rather than joint, obligations to refrain from increasing the hazards insured.

Although the opinion does not discuss the Hawkins' policy language, the court has located a copy of the record on appeal from the 1934 case. A portion of that record contains the parties' insurance contract. Consistent with the Standard Policy in effect in 1934, the Hawkins' policy with Glens Falls Insurance Company indeed contains an exclusion identical to the increased hazard exclusion presently included in the current Standard Policy. (Record at 24), *Hawkins v. Glens Falls Ins. Co.* (No. 7930) (*available at* West Virginia University College of Law, College of Law Library.)

The supreme court of appeals, of course, is presumed to have read the record in the case before it. *Cf. Cunningham v. Heltzel*, 87 W.Va. 391, 393, 105 S.E. 155, 157 (1920) ("Presumptively, the [trial] court read and understood the decree, and knew what the record contained."). Accordingly, there is at least an indication in West Virginia law that innocent co-insureds may recover under the terms of the Standard Policy even when a fellow insured, or his agent, is complicit in an act of arson.[4]

---

**4.** It is of no moment that there was an inter-

vening, 1957 amendment of the Standard Pol-

Looking to the law of other jurisdictions, a majority of state courts have made explicit what seems implicit from *Hawkins*. The overwhelming number of courts confronting the issue have held there is a significant distinction between a standard policy's use of "the insured[,]" and the typical fire insurance policy's use of the phrases "an insured" or "one or more covered persons" in a coverage exclusion.

In a recent decision, the Supreme Court of Iowa observed:

[The innocent insured] argues the consistent use of the phrase "the insured" in the [standard] policy evinces a legislative intent to apply the exclusions only to the malfeasant insured, and not also to the innocent insured; when a homeowners policy denies coverage whenever "an insured" intentionally causes the loss, it conflicts with ... [Iowa's standard fire insurance policy, Iowa Code § 515.138].

When interpreting our standard fire insurance policy, we look to the decisions of other jurisdictions with a similar policy. *See, e.g., Olson,* 255 Iowa at 145–47, 121 N.W.2d at 512–13 (looking to other states to resolve dispute about standard policy). *Doing so, we discover [the innocent insured's] argument is supported by the great weight of authority. As the court of appeals noted, courts presented with this same question—and a growing number at that— have almost unanimously ruled in favor of the innocent coinsured ....*

*Sager v. Farm Bur. Mut. Ins. Co.,* 680 N.W.2d 8, 13 (2004) (emphasis added).

As noted correctly in *Sager,* the courts confronting the issue have almost unanimously ruled in favor of the innocent insured. *See, e.g., Trinity Universal Ins.*

*Co. v. Kirsling,* 139 Idaho 89, 73 P.3d 102, 106–07 (2003); *Volquardson v. Hartford Ins. Co.,* 264 Neb. 337, 647 N.W.2d 599, 610 (2002); *Lane v. Security Mut. Ins. Co.,* 96 N.Y.2d 1, 724 N.Y.S.2d 670, 747 N.E.2d 1270, 1272 (N.Y.2001); *Watson v. United Servs. Auto. Ass'n.,* 566 N.W.2d 683, 689 (Minn.1997); *Osbon v. Nat'l Union Fire Ins. Co.,* 632 So.2d 1158, 1161 (La.1994); *Borman v. State Farm Fire & Cas. Co.,* 198 Mich.App. 675, 499 N.W.2d 419, 422 (Mich.App.1993); *Watts v. Farmers Ins. Exch.,* 98 Cal.App.4th 1246, 120 Cal. Rptr.2d 694, 706 (2002).

The *Lane* case is illustrative. The Court of Appeals of New York discussed the applicable analysis:

Through use of the language "the insured" in the standard policy, the statute delineates independent liabilities and obligations *as to each insured to refrain from incendiary acts.* Accordingly, to the extent that the "Intentional Acts" exclusion creates joint liability and bars coverage to plaintiff, an innocent insured not implicated in her son's incendiary act, the exclusion provision is unenforceable under Insurance Law § 3404(f)(1)(A).

As [the] Supreme Court aptly noted in the present case, *the "an insured" language contained in defendant's policy "offers an innocent party significantly less coverage than the language 'the insured'.* Since the latter phrase is that adopted by the Legislature in the Insurance Law, use of the former violates that statute's requirement that all fire policies offer the level of coverage provided in the standard policy" *(Lane v. Security Mut. Ins. Co., supra,* 175 Misc.2d, at 620, 668 N.Y.S.2d 1021).

icy following the decision in *Hawkins*. Syl. Pt. 2, *Kirk v. Firemen's Ins. Co. of Newark,* 107 W.Va. 666, 667, 150 S.E. 2, 3 (1929)("The Legislature, in prescribing the New York stan-

dard as an exclusive form of fire insurance policy, is presumed to have adopted the previous interpretations of its provisions by this court.").

*Id.* at 1272; *see also* Black's Law Dictionary (6th ed.1990)(defining "the" for statutory construction purposes as "particulariz[ing] the subject which it precedes" and that it is a "word of limitation as opposed to [the] indefinite or generalizing force [of] 'a' or 'an.' "). The decision by the Court of Appeals of New York is also of particular note, as it is the state from which Standard Policy emanates.

Inasmuch as West Virginia case law and this overwhelming weight of extra-jurisdictional authority supports the rule, the court predicts the supreme court of appeals would conclude the policy exclusion provides insureds less protection than the terms of the Standard Policy. By operation of law, then, the policy's intentional acts exclusion is void. The Standard Policy exclusion, as construed, permits an innocent co-insured to recover policy proceeds even when a fellow insured engages in arson that destroys the insured property and premises.[5]

Based on the foregoing, the court denies defendant's motion for partial summary judgment, filed July 3, 2002, and grants plaintiff Teresa Icenhour's motion for partial summary judgment filed July 17, 2002.

As noted *supra,* the court adheres to its prior rulings in the June 14, 2002, order. Accordingly, taking into account the current ruling, the remaining factual issues in the case include (1) whether Teresa Icenhour was complicit in the arson in any way, assuming her husband was responsible for setting the blaze, (2) whether Nadine Icenhour and Geraldine Robinson had an insurable interest in the real property and its improvements, and (3) the measure of damages recoverable if plaintiffs prevail.

The case will proceed to trial on these issues.

---

**5.** Although neither decision constitutes precedent, the court notes the same result has been reached by both the United States District Court for the Northern District of West Virginia and the United States Court of Appeals for the Fourth Circuit. *See Westfield Ins. Co. v. Cimino,* No. 5:97cv97, slip op. at 9 (N.D.W.Va. Mar. 29, 1999), *aff'd,* No. 99–1574, 2000 WL 627643 (4th Cir. May 16, 2000).