73 P.3d 1252

Edward J. NANGLE and Nancy H.
Nangle, husband and wife,
Plaintiffs–Appellants,

v.

FARMERS INSURANCE COMPANY OF
ARIZONA, an Arizona corporation,
Defendant–Appellee.

No. 1 CA–CV 02–0212.

Court of Appeals of Arizona,
Division 1, Department C.

Aug. 12, 2003.

**518**

Copple, Chamberlin, Boehm & Murphy, P.C. By Scott E. Boehm, Phoenix, Attorneys for Plaintiffs–Appellants.

Broening Oberg Woods Wilson & Cass, P.C. By John W. Oberg and William R. Harrison, Phoenix, Attorneys for Defendant–Appellee.

Arnett & Arnett, P.C. By Wayne C. Arnett, Tempe, Amicus Curiae.

## OPINION

LANKFORD, Presiding Judge.

¶ 1 Edward J. Nangle and Nancy H. Nangle appeal from a summary judgment for Farmers Insurance Company of Arizona ("Farmers"). The Nangles had filed an action against Farmers for damages. The superior court decided that the fire insurance policy Farmers had issued to the Nangles did not cover the fire loss even if there existed a disputed fact as to whether Edward set the fire that destroyed the Nangles' home. The court ruled that Nancy Nangle could not collect for the loss as an innocent coinsured. The court also rejected the Nangles' claim as barred by the policy's one-year limit to bring an action on the policy. We reverse the summary judgment in favor of Farmers and remand for further proceedings.

¶ 2 The Nangles purchased a homeowners policy from Farmers, effective October 30, 1996, through March 20, 1997. The policy contained an exclusion which provided as follows:

If *any insured* directly causes or arranges for a loss to covered property in order to obtain insurance benefits, this policy is void. We will not pay *you* [*or any other insured* ] for this loss.

(italics added, bold in original). The policy also shortened the time to bring an action on the policy from the statutory six-year limita-

tions period to one year: The policy required that "[s]uit on or arising out of this policy must be brought within one year after the loss occurs."

¶ 3 In February and March 1997, the Nangles' home and its contents were damaged by three fires. The Nangles submitted claims to Farmers, and its investigator examined the claims. Based on his report, as well as investigative reports prepared by the Glendale Fire Department, by an independent expert, and by a forensic engineer, Farmers believed that Edward intentionally caused the fires. On September 11, 1997, Farmers denied coverage based on the exclusion. Farmers' denial also stated that its action rested in part on Edward's refusal to submit a "sworn statement."

¶ 4 The Nangles apparently requested reconsideration of their claim, and on February 7, 1998, Edward provided a sworn statement that he had not set the fires. In May, Farmers again wrote to deny the claim based on its belief that Edward intentionally caused the fires.

¶ 5 On February 2, 1999, the Nangles filed a complaint in propria persona against Farmers. In August 1999, they filed the complaint in this case, and the first action was voluntarily dismissed.

¶ 6 The Nangles filed a motion for partial summary judgment, contending that Nancy was entitled to coverage as an innocent coinsured. Farmers also moved for summary judgment, alleging that the Nangles' complaint was filed after the policy's one-year limit.

¶ 7 The superior court decided that the action was time-barred. The court nevertheless ruled on the merits of the Nangles' motion for partial summary judgment. It applied *Brown v. United States Fidelity & Guaranty. Co.*, 194 Ariz. 85, 977 P.2d 807 (App.1998), and determined that the policy exclusion specifically precluded recovery by Nancy as an innocent coinsured.

¶ 8 Farmers then sought its attorneys' fees. Having received no response, the superior court entered judgment in favor of Farmers "as to all claims" on December 19, 2001. After receiving the Nangles' objection to Farmers' fee application, the superior court vacated the original judgment, consid-

ered the Nangles' objections to Farmers' request for fees, and entered a new judgment in favor of Farmers awarding Farmers reduced attorneys' fees of $5000.

¶ 9 The Nangles timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 12–2101(B) (2003).

¶ 10 The Nangles raise two issues on appeal: (1) Was their claim time-barred? (2) Could Nancy recover under the policy as an innocent coinsured? We review de novo the trial court's rulings on issues of law, including the interpretation of insurance contracts. *See Provident Nat. Assur. Co. v. Sbrocca*, 180 Ariz. 464, 465, 885 P.2d 152, 153 (App. 1994).

¶ 11 We first consider whether this action was time-barred. The statutory limitations period for actions arising out of a written contract is six years. *See* A.R.S. § 12–548 (2003). However, a fire insurance policy may require that the insured file an action within a shorter period, so long as the statutory limitations period is not shortened to less than one year. *See* A.R.S. § 20–1115(A)(3) (2002); *Zuckerman v. Transamerica Ins. Co.*, 133 Ariz. 139, 143, 650 P.2d 441, 445 (1982). In this case, the policy required the Nangles to bring an action against Farmers "within one year after the loss occurs."

¶ 12 The superior court incorrectly calculated the limitations period from the initial denial of the Nangles' claim in September 1997. The parties agree, and our supreme court has held, that the limitations period is to be calculated from the date of the fires. *See Zuckerman*, 133 Ariz. at 145, 650 P.2d at 447 (rejecting argument that phrase "inception of the loss" means that limitation period is calculated from date of claim denial). The Nangles filed their first action approximately two years after the fires. Thus, unless the policy's limitations period is unenforceable, their claims are barred.

¶ 13 The Nangles argue, however, that the limitations period was tolled until Farmers sent the second claim denial letter on May 11, 1998, or that Farmers is equitably estopped from enforcing the limitations

period because it was involved in ongoing negotiations with the insureds until May 1998. *See generally Nolde v. Frankie*, 192 Ariz. 276, 964 P.2d 477 (1998); *Roer v. Buckeye Irrig. Co.*, 167 Ariz. 545, 809 P.2d 970 (App.1990); *Certainteed Corp. v. United Pacific Ins. Co.*, 158 Ariz. 273, 762 P.2d 560 (App.1988).

¶ 14 An insurer's rights under a policy's limitations clause "may be lost by a waiver or estoppel resulting from continuing negotiations between the parties." *Zuckerman*, 133 Ariz. at 142, 650 P.2d at 444.

> A waiver or estoppel with respect to a contractual limitation period will exist if an insurer by its conduct induces its insured, by leading him to reasonably believe a settlement or adjustment of his claim will be effected without the necessity of bringing suit, to delay commencement of the action on the policy until after the limitation period has run.

*Id.* (quoting *Shea North, Inc. v. Ohio Cas. Ins. Co.*, 115 Ariz. 296, 298, 564 P.2d 1263, 1265 (App.1977)). This Court in *Shea North* reversed a summary judgment for the insurer and explained that "an insurer's promise of payment or failure to deny liability until after the limitation period has run may result in waiver or estoppel." 115 Ariz. at 298, 564 P.2d at 1265. In *Shea North*, the insurer admitted coverage and paid the insured for part of the amount it claimed. The insurer claimed that it had paid the claim in full, while the insured claimed that the "payment was represented to be interim in nature . . . ." *Id.* This Court held that the insured had created a question of fact as to whether it reasonably believed it would receive full payment "without the necessity of resorting to the courts and thus reasonably delayed bringing suit until after the limitation period had expired . . . ." *Id.*

¶ 15 However, an insurer is not estopped from enforcing its period of limitations clause if it clearly states the limits of its liability and its "refus[al] to recognize any further liability." *Zuckerman*, 133 Ariz. at 142, 650 P.2d at 444. In that case, the insurer had taken a final position, did not indicate that it would change its initial offer, and did not lead opposing counsel to believe that a higher amount could be reached without litigation. *Id.* Although *Zuckerman* es-

topped the insurer from enforcing a time-limiting clause on other grounds, it held that the " 'negotiation type' of estoppel raised in *Shea North*, 115 Ariz. at 298, 564 P.2d at 1265, [was] not applicable here." *Id.*

¶ 16 In this case, the evidence of "negotiations" is insufficient to establish estoppel. Farmers immediately conducted an extensive investigation, and within seven months it had unequivocally denied the claim based on the results of its investigation. Although Farmers admits that it subsequently agreed to reconsider its decision, Farmers neither stated nor implied either that coverage existed or that the Nangles' claim would be paid in any amount. And, although Farmers had paid some expenses on behalf of the Nangles during ·the investigation, it unequivocally stated that such payments would cease after it denied the claim. It also reserved its right to seek reimbursement if the Nangles challenged its denial of coverage. No reasonable insured would believe that such payments were "advances" or "partial payments" for a claim that the insurer intended to fully pay at a later date. The court did not err in deciding that the " 'negotiation type' of estoppel" was inapplicable. *Zuckerman*, 133 Ariz. at 142, 650 P.2d at 444.

¶ 17 Although Farmers is not estopped by its conduct, it may be estopped if the limitation would create an unjust forfeiture. *Id.* at 146, 650 P.2d at 448. Because the "reduction in the limitation [period] which is allowed by law is contractual rather than statutory," the clause does not rise "to the dignity of a statute of limitations," with all the attendant public policy considerations. *Id.* Instead, the legislature has merely allowed insurance companies, if they desire, to insert boilerplate language shortening the period to help protect themselves against fraudulent claims. *Id.* at 143, 650 P.2d at 445. And, as with other boilerplate terms in insurance contracts, such as notice of loss or proof of loss clauses, the term is enforceable "unless it is inequitable to enforce" it. *Id.* at 146, 650 P.2d at 448.

> [T]he insurer may be estopped from raising a defense based upon such an adhesive clause where the enforcement of the clause would work an unjust forfeiture. The **key**

*Id.* (emphasis added).

¶ 18 Prejudice determines whether an insurer may assert the limitation or is estopped from asserting it. *Zuckerman* held that, because the insurer neither disputed "the loss, its cause, or the existence of coverage for the loss," nor the amount of damage caused by the loss, it was "obvious" that the insurer "was not prejudiced by the fact that suit was brought more than one year after the loss occurred." 133 Ariz. at 146–47, 650 P.2d at 448–49. Thus, the insurer was estopped to deny coverage based solely on the time limitation. *Id.* at 147, 650 P.2d at 449.

¶ 19 Farmers contends that the estoppel defense cannot apply in this case because, unlike *Zuckerman*, the Nangles' claims are invalid and thus it is not clear that enforcement of the policy's limitation provision "would cause a forfeiture of a patently valid claim." *Zuckerman*, 133 Ariz. at 147, 650 P.2d at 449. But the Nangles' claims are not patently invalid any more than they are patently valid. Unlike the insurer in *Zuckerman*, which had essentially conceded the loss, coverage, and the damage amount, the Nangles have not conceded that their claims are invalid. Edward disputes Farmers' allegation that he intentionally set the fires, and the record contains only Farmers' claim denial letter asserting that the evidence indicates overwhelmingly that he set the fires. No evidence of Edward's involvement was presented to the superior court.

¶ 20 Furthermore, *Zuckerman* did not require that a claim must be "patently valid" to be protected from unjust forfeiture. That the claim was "patently valid" was only one factor in that case. Instead, *Zuckerman* stated that the "key factor" to consider is "whether the insurer has shown prejudice by reason of the delay in filing suit." 133 Ariz. at 146, 650 P.2d at 448. Similarly, the court in *Lindus v. Northern Insurance Co.*, 103 Ariz. 160, 164, 438 P.2d 311, 315 (1968), held

that the insured's failure to give the timely notice of the loss required by the policy would not defeat the claim because the insurer failed to show that it was prejudiced by the insured's delay. *See also Liberty Mut. Fire Ins. Co. v. Mandile*, 192 Ariz. 216, 223, 963 P.2d 295, 302 (App.1997) (insurer bears burden to establish prejudice; delay alone does not establish prejudice).

¶ 21 Like the insurers in *Lindus* and *Liberty Mutual*, Farmers failed to present any evidence to show that the one-year delay prejudiced it. On the contrary, Farmers received prompt notice of the claimed loss and conducted an extensive investigation immediately after it received that notice. Moreover, Farmers provided no evidence to the superior court to show that it would have done anything differently if the Nangles had brought the action within one year of the loss. Although Farmers asserted generally, and asserts on appeal, that "memories fade" and "witnesses may become unavailable," it has not shown that any given witness became unavailable or that any specific relevant fact was forgotten or became unavailable due to the delay. Indeed, much of the delay in this case occurred *after* the Nangles filed their lawsuit—the parties engaged in two years of discovery before Farmers first asserted its limitations defense.

¶ 22 Because prejudice is the "key factor" to consider when deciding whether to enforce a policy's limitations clause, and Farmers showed no prejudice, the court erred in enforcing the policy's limitations clause. We therefore reverse the summary judgment for Farmers.

¶ 23 This appeal presents another issue: Does the policy bar any recovery by Nancy as an innocent coinsured? The superior court denied the Nangles' motion for a partial summary judgment that would declare that Nancy can recover half of the loss. It relied on *Brown*, in which we determined that nearly identical policy language bars recovery by an innocent coinsured. 194 Ariz. at 95, ¶ 62, 977 P.2d at 817 (holding that "any insured" language in intentional loss clause prohibits recovery by innocent coinsureds).

¶ 24 A question not presented in *Brown* is controlling here. In *Brown*, we interpreted

a policy's intentional loss provision that barred "any insured" from recovery. 194 Ariz. at 95, 977 P.2d at 817. In contrast, this case requires us to interpret a bar applying to "the insured."

¶ 25 The language "the insured" is required by statute. In Arizona, all fire policies must have standard language. *See* A.R.S. § 20–1503(A) (2002).[1] The Standard Policy contains the following provision regarding hazards increased by the insured: "[T]his Company shall not be liable for loss occurring ... while the hazard is increased by any means within the control or knowledge of *the* insured[.]" *See* Arizona Standard Fire Policy (New York Standard Fire Policy, Edition of 1943), at 2, lns. 28–32 (emphasis added).

¶ 26 Although the Farmers policy excludes coverage for intentional acts by "any insured," the Standard Policy's increased hazard provision confines exclusion to acts of "the insured." The statutory provisions set forth in the Standard Policy govern if a policy conflicts with the Standard Policy's provisions. *See* A.R.S. § 20–1118 (2002); *Limon v. Farmers Ins. Exch.*, 11 Ariz.App. 459, 461, 465 P.2d 596, 598 (1970).

¶ 27 We therefore must decide whether arson by "the insured" bars an innocent coinsured from recovery. We turn to New York's interpretation of its standard policy—the same as Arizona's—for guidance. The New York Court of Appeals addressed this issue in *Lane v. Security Mut. Ins. Co.*, 96 N.Y.2d 1, 724 N.Y.S.2d 670, 747 N.E.2d 1270 (2001). The fire insurance policy excluded coverage for an intentional fire set by "an insured." *Lane* held that the policy language conflicted with the statutorily mandated language, which excludes coverage only

for the act of "the insured."[2] 724 N.Y.S.2d 670, 747 N.E.2d at 1271.

> Through use of the language 'the insured' in the standard policy, the statute delineates independent liabilities and obligations as to each insured to refrain from incendiary acts. Accordingly, to the extent that the 'Intentional Acts' exclusion creates joint liability and bars coverage to plaintiff, an innocent insured not implicated in [the] incendiary act, the exclusion provision is unenforceable under [the statute].

*Id.* 724 N.Y.S.2d 670, 747 N.E.2d at 1272.

¶ 28 Most other courts uphold coverage, particularly when the policy exclusion applies to "the insured" rather than to "an insured." *See* 10 Lee R. Russ and Thomas F. Segalla, *Couch on Insurance*, § 149:48–50, at 149–59 to 149–67 (3d ed.1995); Larry D. Scheafer, Annotation, *Right of Innocent Insured to Recover Under Fire Policy Covering Property Intentionally Burned by Another Insured*, 11 A.L.R.4th 1228 (1982).

¶ 29 The increased hazard provision in Arizona's Standard Policy, by using the term "the insured" rather than "any insured" or "an insured," evidences an intent to allow recovery by innocent coinsureds.[3] This is consistent with the protective purpose of our statute and the decisions of most courts.

¶ 30 Farmers contends, without citing any authority, that the clause at issue in the Standard Fire Policy deals with "failure to mitigate risks," not "intentionally causing loss," and therefore does not apply to restrict the terms of the intentional acts provision in its policy. The increased hazard clause, however, is in the section of the Standard Fire Policy entitled, "Conditions suspending or re-

---

**1.** Section 20–1503(A) provides:

> No policy of fire insurance covering property located in this state shall be made, issued or delivered unless it conforms as to all provisions and the sequence thereof with the basic policy commonly known as the New York standard fire policy, edition of 1943. Such policy is designated as the Arizona standard fire policy.

**2.** The statutory language is identical to Arizona's provisions. "We hold," the court wrote, "that the subject exclusion impermissibly restricts the coverage mandated by statute and afforded the innocent insured." *Lane*, 724 N.Y.S.2d 670, 747

N.E.2d at 1271. We therefore reject Farmers' contention that its intentional loss exclusion is a permissible term that merely supplements the standard fire policy. *See* A.R.S. § 20–1112(B) (2002) (allowing additional terms consistent with standard policy). Both clauses encompass coverage for increased risk of loss due to the insured's conduct. The standard policy requires coverage, while Farmers' policy defeats coverage. This is a conflict, not consistency.

**3.** The words "any insured" are broader than "the insured." 10 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance*, § 149:48 at 61.

stricting insurance." The title indicates an intent that the increased hazard clause will operate as an exclusion clause, not a mitigation of loss clause. Moreover, the plain language of the clause refers to the insured "increas[ing]" the hazard, not "failing to mitigate" the hazard. Finally, many decisions have regarded an "intentional acts" exclusion clause similar to Farmers' as subsumed by, and governed by, the increased risk clause in the standard policy. *E.g., Lane,* 724 N.Y.S.2d 670, 747 N.E.2d at 1271. Farmers' policy must conform to the standard policy in excluding losses caused by the insured.

¶ 31 The superior court erred by entering summary judgment against Nancy's claim. However, a question of fact remains as to whether Nancy is an innocent coinsured. We reject the Nangles' contention that, because Farmers admitted that Nancy was not involved in setting any of the fires, the court should have granted their motion for partial summary judgment declaring that Nancy can recover half of the insurance proceeds.[4]

¶ 32 Although Farmers has admitted that Nancy was uninvolved in the fires, the pivotal question remains whether Nancy had knowledge that the fires would be set. The Standard Policy allows insurers to exclude coverage for "loss occurring ... while the hazard is increased by any means within the control *or knowledge* of the·insured." (Emphasis added.) The fire policy thus does not cover the loss if Farmers can show that Nancy knew the fires would be set. Because this issue cannot be resolved on the record before us, we remand for further proceedings.

¶ 33 The Nangles ask us to reverse the superior court's award of attorneys' fees to Farmers pursuant to A.R.S. § 12–341.01(A) (2003). Because we have reversed the judgment in favor of Farmers, Farmers is no longer the prevailing party. Accordingly, we reverse the award.

¶ 34 Both parties request an award of attorneys' fees and costs on appeal. Because the Nangles have succeeded in reversing the judgment against them, they are the prevailing parties on appeal and are entitled to recover fees and costs. *See Wagenseller v. Scottsdale Mem'l Hosp.,* 147 Ariz. 370, 710

P.2d 1025 (1985). We therefore will award fees and costs. However, the litigation is not yet concluded and the Nangles may yet lose their case in the superior court. Additionally, Farmers successfully defended the superior court's ruling that the Nangles are not entitled to summary judgment. Therefore, we may exercise our discretion to award attorneys' fees in a reduced amount after the parties' compliance with Rule 21 of the Arizona Rules of Civil Appellate Procedure.

¶ 35 For the foregoing reasons, we reverse the superior court's judgment in favor of Farmers and remand for further proceedings consistent with this decision.

CONCURRING: SHELDON H. WEISBERG and PATRICK IRVINE, Judges.

---

4. Nancy only asks for "her portion," one half, of    the insurance proceeds.