[No. S179252. Feb. 17, 2011.]

CENTURY-NATIONAL INSURANCE CO., Plaintiff and Respondent, v. JESUS GARCIA et al., Defendants and Appellants.

**COUNSEL**

Beverly Hills Law Associates, Stephen M. Losh and Angelica M. Leon for Defendants and Appellants.

Haight Brown & Bonesteel, Valerie A. Moore and Christopher Kendrick for Plaintiff and Respondent.

## Opinion

**BAXTER, J.**—At issue in this case is a fire insurance policy that contains clauses excluding coverage for losses caused by the intentional act or criminal conduct of "any insured." The question is whether, based on these exclusion clauses, the insurer properly prevailed on a demurrer to the cross-complaint of two allegedly innocent insureds who suffered losses when their son, a coinsured under the policy, intentionally set fire to their home. We conclude the answer is no, because the clauses impermissibly reduce coverage that is statutorily mandated. We therefore reverse the judgment of the Court of Appeal, which found otherwise.

### Factual and Procedural Background

Jesus Garcia, Sr., and his wife Theodora Garcia (the Garcias) suffered substantial damage to their home when their adult son set fire to his bedroom. At the time of the fire, the home was covered under a homeowners policy issued by Century-National Insurance Company (Century-National). Under this policy, Jesus Garcia, Sr., was the named insured, and Theodora Garcia and their son also qualified as insureds. The Garcias filed an insurance claim for the damage, which Century-National investigated and denied.

Century-National filed a complaint seeking a declaration that it has no duty to pay for the Garcias' loss because its insurance policy contains clauses excluding coverage for the intentional act or criminal conduct of "any insured" (collectively, the intentional acts exclusion). The Garcias filed a cross-complaint alleging causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing, and reformation.

As relevant here, Century-National demurred to the cross-complaint, contending the intentional acts exclusion bars any recovery by the Garcias because their son intentionally set fire to their home. The Garcias opposed the demurrer, asserting the policy's intentional acts exclusion impermissibly conflicts with provisions of the Insurance Code that would not bar so-called "innocent insureds" from recovering despite a coinsured's intentional or criminal conduct.[1]

The trial court agreed with Century-National, determining that (1) the Century-National policy defines the term "any insured," as contained in the

---

[1] A demurrer must assume the truth of a complaint's properly pleaded allegations. (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 20 [40 Cal.Rptr.3d 205, 129 P.3d 394].) Here, the cross-complaint incorporates the Century-National policy by reference and alleges the Garcias are innocent insureds, that is, insureds who did not direct or participate in setting fire to their home.

intentional acts exclusion, to include relatives of the insured who lived at the insured property, i.e., the Garcias' adult son, (2) courts generally interpret policy exclusions for intentional or criminal acts to exclude coverage for innocent coinsureds, and (3) Insurance Code section 533 expressly sets forth California's public policy of denying coverage for willful wrongs. The court sustained the demurrer without leave to amend and entered a judgment dismissing the cross-complaint. The Court of Appeal affirmed.

## DISCUSSION

In California, fire insurance policies are regulated by the Insurance Code.[2] Section 2070 provides: "All fire policies . . . shall be on the standard form, and, except as provided by this article shall not contain additions thereto. No part of the standard form shall be omitted therefrom except that any policy providing coverage against the peril of fire only, or in combination with coverage against other perils, need not comply with the provisions of the standard form of fire insurance policy . . . ; *provided, that coverage with respect to the peril of fire, when viewed in its entirety, is substantially equivalent to or more favorable to the insured than that contained in such standard form fire insurance policy.*" (Italics added.) Provisions of the standard form fire policy are set forth in section 2071. Thus, a policy that does not conform to section 2071's standard provisions must provide total fire coverage that is at least "substantially equivalent" to coverage provided by the standard form. (§ 2070; see *Julian v. Hartford Underwriters Ins. Co.* (2005) 35 Cal.4th 747, 754 [27 Cal.Rptr.3d 648, 110 P.3d 903] [policy exclusions are unenforceable to the extent they conflict with the Ins. Code].)

As the pleadings reflect, the Century-National policy is a package policy divided into two sections: section I pertains to *property* coverage, while section II pertains to *liability* coverage. There is no dispute the section I property coverage is in effect a fire policy subject to the requirements of sections 2070 and 2071. Accordingly, we examine the coverage terms and exclusions applicable to that section.

Section I provides in relevant part that Century-National does "not cover loss caused directly or indirectly by any of the following excluded perils, whether occurring alone or in any sequence, or concurrently, with a covered peril: [¶] . . . [¶] 9. Intentional Loss, meaning any loss arising out of any act committed by or at the direction of *any* insured having the intent to cause a loss. [¶] 10. Dishonesty, Fraud or Criminal Conduct of *any* insured." (Italics added.)[3]

---

[2] All further statutory references are to this code unless otherwise indicated.

[3] Century-National does not contend that dishonest or fraudulent conduct is at issue here.

■ That this intentional acts exclusion uses the term "any insured" is significant. As we recently explained, "[a]bsent contrary evidence, in a policy with multiple insureds, exclusions from coverage described with reference to the acts of 'an' or 'any,' as opposed to 'the,' insured are deemed under California law to apply collectively, so that if one insured has committed acts for which coverage is excluded, the exclusion applies to all insureds with respect to the same occurrence." (*Minkler v. Safeco Ins. Co. of America* (2010) 49 Cal.4th 315, 318 [110 Cal.Rptr.3d 612, 232 P.3d 612] [citing cases]; see *Western Mutual Ins. Co. v. Yamamoto* (1994) 29 Cal.App.4th 1474, 1486–1487 [35 Cal.Rptr.2d 698].) Consequently, under the policy as written, the Garcias may not recover against Century-National because, even if they were innocent of wrongdoing, their fire losses were caused by another insured, who acted intentionally and criminally.

Although the Century-National policy purports to exclude coverage of the Garcias' losses, section 2070 requires a comparison of the policy with the standard form fire policy set forth in section 2071. The question is whether the Century-National policy provides coverage that is at least as favorable to the insureds as the coverage provided in the standard form. If application of the intentional acts exclusion in the former results in coverage that is not at least substantially equivalent to the level of protection available in the latter, the exclusion is to that extent invalid. (§ 2070; *Julian v. Hartford Underwriters Ins. Co., supra*, 35 Cal.4th at p. 754.)

■ Notably, the statutory standard form contains no express exclusion for losses caused by intentional acts or criminal conduct. (See § 2071.) By virtue of section 533, however, "[a]n insurer is not liable for a loss caused by the wilful act of the insured . . . ." Because section 533 represents " 'an implied exclusionary clause which by statute is to be read into all insurance policies' " (*J. C. Penney Casualty Ins. Co. v. M. K.* (1991) 52 Cal.3d 1009, 1019 [278 Cal.Rptr. 64, 804 P.2d 689] [citing cases]), the standard form fire policy is properly read as excluding coverage for losses caused by "the wilful act of *the* insured." (§ 533, italics added.)

Section 533's use of the term "the insured" bears directly on the instant coverage issue: unlike policy exclusions that refer to "an" insured or "any" insured, exclusions based on acts of "the" insured are construed as not barring coverage for innocent coinsureds. (See *Arenson v. Nat. Automobile & Cas. Ins. Co.* (1955) 45 Cal.2d 81, 83 [286 P.2d 816] (*Arenson*) [policy exclusion for " 'destruction caused intentionally by or at the direction of the insured' " did not bar recovery by innocent insured whose minor son started a fire at a school]; *Watts v. Farmers Ins. Exchange* (2002) 98 Cal.App.4th 1246, 1260–1261 [120 Cal.Rptr.2d 694]; cf. *Minkler v. Safeco Ins. Co. of America, supra*, 49 Cal.4th at p. 318; *Western Mutual Ins. Co. v. Yamamoto, supra*, 29

Cal.App.4th at pp. 1486–1487.) Given the settled meaning of the language used in section 533, the standard form fire policy must be construed as including a willful acts exclusion that is protective of innocent insureds.

Viewed as a whole, the standard form reinforces this conclusion. Section 2071 contains no clause providing that exclusions are to operate on a joint or collective basis. To the contrary, the provisions set forth in section 2071 uniformly indicate that provisions barring insurer liability or excluding coverage are to operate severally. For example, the standard form states that an insurer "shall not be liable for loss by fire or other perils insured against in this policy caused, directly or indirectly, by: . . . (i) neglect of *the* insured to use all reasonable means to save and preserve the property at and after a loss, or when the property is endangered by fire in neighboring premises." (§ 2071, italics added.)[4] The standard form also contains an "increase in hazard" clause specifying that, unless otherwise provided in writing, the insurer "shall not be liable for loss occurring (a) while the hazard is increased by any means within the control or knowledge of *the* insured." (*Ibid.*, italics added.)[5] Finally, the form contains a so-called "fraud exclusion" stating: "This entire policy shall be void if, whether before or after a loss, *the* insured has willfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the insured therein, or in case of any fraud or false swearing by *the* insured relating thereto." (*Ibid.*, italics added.)[6]

That these three standard form provisions all refer to "the" insured evinces the Legislature's intent to ensure coverage on a several basis and protect the ability of innocent insureds to recover for their fire losses despite neglectful or intentional acts of a coinsured. (See *Arenson, supra,* 45 Cal.2d at pp. 83–84; *Watts v. Farmers Ins. Exchange, supra,* 98 Cal.App.4th at pp. 1258–1261.) Construing the statutory policy as including a willful acts exclusion precisely as articulated in section 533, so as to provide coverage for an innocent insured when a coinsured commits arson, advances this legislative objective. By the same token, enforcing the Century-National intentional acts exclusion against innocent insureds does not. Accordingly, it stands to reason that the Century-National policy, which purports to deny coverage to innocent insureds when a coinsured intentionally sets fire to their home, provides coverage that is markedly less favorable to insureds than the coverage provided in the standard form.

---

[4] The Century-National policy contains a clause on this topic that substitutes "any insured" in place of "the insured."

[5] On this point, the Century-National policy states the insurer may "cancel" the policy upon "[d]iscovery of grossly negligent acts or omissions substantially increasing any hazard insured against."

[6] The Century-National policy includes a provision on this subject that refers to "an insured" instead of "the insured."

Arguing to the contrary, Century-National notes California decisions have consistently held that intentional and criminal acts exclusions that expressly bar insurance coverage for the acts of "an" insured or "any" insured negate all coverage when applied. (E.g., *Zelda, Inc. v. Northland Ins. Co.* (1997) 56 Cal.App.4th 1252 [66 Cal.Rptr.2d 356]; *Western Mutual Ins. Co. v. Yamamoto, supra,* 29 Cal.App.4th 1474; *Fire Ins. Exchange v. Altieri* (1991) 235 Cal.App.3d 1352 [1 Cal.Rptr.2d 360]; *Allstate Ins. Co. v. Condon* (1988) 198 Cal.App.3d 148 [243 Cal.Rptr. 623].) As Century-National acknowledges, however, such decisions "admittedly involved third-party liability insurance," which is not subject to the requirements of sections 2070 and 2071.

We have found no legislative history or published California decision addressing whether sections 2070 and 2071 bar enforcement of an exclusion clause in a fire policy that denies coverage to innocent insureds when a coinsured has committed arson. Significantly, courts in other jurisdictions with identical or very similar standard form fire policies have reached the same conclusion we do, i.e., that an insurance clause purporting to exclude coverage for an innocent insured based on the intentional acts of a coinsured impermissibly reduces statutorily mandated coverage and is unenforceable to that extent. (E.g., *Nangle v. Farmers Ins. Co.* (2003) 205 Ariz. 517 [73 P.3d 1252]; *Trinity Universal Ins. Co. v. Kirsling* (2003) 139 Idaho 89 [73 P.3d 102]; *Sager v. Farm Bureau Mutual Ins. Co.* (Iowa 2004) 680 N.W.2d 8 (*Sager*); *Osbon v. National Union Fire Ins. Co.* (La. 1994) 632 So.2d 1158; *Barnstable County Mutual Ins. Co. v. Dezotell* (Mass.Super.Ct. 2006) 21 Mass.L.Rptr. 269; *Borman v. State Farm Fire & Casualty Co.* (1994) 446 Mich. 482 [521 N.W.2d 266]; *Williams v. Auto Club Group Ins. Co.* (1997) 224 Mich.App. 313 [569 N.W.2d 403] [holding that statutory amendments postdating *Borman* did not change Michigan's fire policy law protecting innocent coinsureds]; *Watson v. United Services Automobile Assn.* (Minn. 1997) 566 N.W.2d 683; *Lane v. Security Mutual Ins. Co.* (2001) 96 N.Y.2d 1 [724 N.Y.S.2d 670, 747 N.E.2d 1270]; *Volquardson v. Hartford Ins. Co.* (2002) 264 Neb. 337 [647 N.W.2d 599] (*Volquardson*); see also *Icenhour v. Continental Ins. Co.* (S.D.W.Va. 2004) 365 F.Supp.2d 743.)[7]

In these out-of-state authorities, the courts made no mention of an implied statutory exclusion similar to section 533, though they effectively acknowledged that a wrongdoer should not benefit from his or her wrongdoing. As relevant here, the courts reviewed the standard fire policies in their respective

---

[7] "Fire insurance is effected in every state through a standard form required by state statute. The majority of the states follow the New York 1943 form of 165 lines. Although minor differences exist from state to state, there is substantial uniformity in the provisions." (Herr, *Commercial and Residential Property and Liability Insurance* (1982) 17 Real Prop. Prob. & Tr. J. 633, 634, fn. omitted; see *Aliberti v. Allstate Ins. Co.* (1999) 74 Cal.App.4th 138, 145 [87 Cal.Rptr.2d 645] [noting the N.Y. form was adopted by Cal. in § 2071 and by a majority of state legislatures].)

states and found that, even though they contained no express intentional acts exclusion, they included other standard provisions very similar to those in section 2071 that bar insurer liability or otherwise negate coverage based upon conduct of *the* insured, as opposed to *an* insured or *any* insured. One court explained the import of these provisions as follows: "[T]he standard policy uses language indicative of a several obligation whereby the insured bears the responsibility for his or her own conduct. We find no provision . . . creating a joint obligation whereby the wrongful actions of one insured could prejudice the rights of an innocent coinsured." (*Volquardson, supra,* 647 N.W.2d at p. 610; see *Sager, supra,* 680 N.W.2d at p. 13 [quoting *Volquardson*].) In light of these legislatively approved standard provisions, the courts concluded their state lawmakers did not intend to impute the intentional acts of an insured to an innocent coinsured having no control over the unauthorized conduct, and found unenforceable any privately drafted policy provision that purported to do so. Although we are not bound to follow these out-of-state authorities, they reflect a broad consensus as to the proper interpretation of the common standard form fire policy. (See *Aliberti v. Allstate Ins. Co., supra,* 74 Cal.App.4th at p. 147 ["The decisions of sister-state courts interpreting their versions of section 2071 are 'particularly persuasive.' "].)

We further note that in some cases, the courts ruled in favor of the innocent insureds based primarily on the circumstance that either the privately drafted policy or the statutory form policy included an increase in hazard clause like the one set forth in section 2071. (§ 2071 [restricting insurer liability for any loss occurring "while the hazard is increased by any means within the control or knowledge of *the* insured" (italics added)]; e.g., *Icenhour v. Continental Ins. Co., supra,* 365 F.Supp.2d at pp. 748–751; *Madsen v. Threshermen's Mutual Ins. Co.* (1989) 149 Wis.2d 594 [439 N.W.2d 607, 612–613].) That is, the courts construed such a clause as an intentional acts exclusion that was reasonably understood as contemplating property damage coverage for an innocent insured when a coinsured committed arson. (*Icenhour,* at pp. 748–751; *Madsen,* at pp. 612–613.)

Century-National does not discuss these authorities. Instead, it relies on *Mackintosh v. Agricultural Fire Ins. Co.* (1907) 150 Cal. 440 [89 P. 102] and *Rizzuto v. National Reserve Ins. Co.* (1949) 92 Cal.App.2d 143 [206 P.2d 431] to argue that the increase in hazard clause applies only when changes are made to the structure or use of the insured premises. But those two decisions simply addressed the applicability of the clause in the circumstances presented. Their analyses did not suggest that the clause does not apply to intentional and/or criminal conduct, and neither do the terms of the clause itself. In any event, we need not resolve whether this particular clause should be construed to specifically protect innocent coinsureds in cases of a coinsured's wrongdoing such as arson. We merely infer from its language and its

presence in the standard form fire policy that recognizing coverage on a several basis is consistent with legislative intent.

Century-National next contends the standard form fraud exclusion—stating the "entire policy shall be void" in the event of willful concealment or misrepresentation on the part of "the" insured—does not demonstrate a legislative intent to protect innocent insureds. That is, the exclusion cannot logically be construed to operate severally, because the only possible meaning of its language is that the policy is void as to all insureds when a coinsured commits fraud. Century-National, however, cites no authority supporting this construction, and numerous jurisdictions have either held or recognized to the contrary, including our own. (E.g., *Watts v. Farmers Ins. Exchange, supra*, 98 Cal.App.4th at pp. 1258–1261; *Steigler v. Ins. Co. of North America* (Del. 1978) 384 A.2d 398, 399–402; *Fireman's Fund Ins. Co. v. Dean* (1994) 212 Ga.App. 262 [441 S.E.2d 436, 437–438]; *Trinity Universal Ins. Co. v. Kirsling, supra*, 73 P.3d at p. 106; *Hildebrand v. Holyoke Mutual Fire Ins. Co.* (Me. 1978) 386 A.2d 329, 331; *Morgan v. Cincinnati Ins. Co.* (1981) 411 Mich. 267 [307 N.W.2d 53, 54–55]; *Watson v. United Services Automobile Assn., supra*, 566 N.W.2d at pp. 691–692; *Hogs Unlimited v. Farm Bureau Mutual Ins. Co.* (Minn. 1987) 401 N.W.2d 381, 384–385; *Volquardson, supra*, 647 N.W.2d at p. 610.)

Relying on *Erlin-Lawler Enterprises, Inc. v. Fire Ins. Exch.* (1968) 267 Cal.App.2d 381 [73 Cal.Rptr. 182], Century-National additionally argues that "nothing . . . suggests that the drafters of the standard policy or the California Legislature sought to imbue the words 'the insured' with the meaning or significance that has since been recognized in relation to the terms 'an insured' or 'any insured' found in modern personal insurance policies." This argument is off the mark. *Erlin-Lawler* concerned an appeal by an insured corporation that sought to recover for losses caused by a fire intentionally set by two shareholders (one current and one former). The principal question was whether the corporation was merely the alter ego of the arsonists; the decision did not analyze the policy language in assessing the corporation's right to recover. *Erlin-Lawler* offers no basis for revisiting the settled meaning of the term "the insured."

Finally, the Court of Appeal concluded below that the Century-National policy "complies with section 2070 because the addition of the provision at issue is not inconsistent with the fire coverage of the standard form policy, which does not address intentional acts." The Court of Appeal also minimized the relevance of section 533, noting the statute "does not govern mandatory requirements for policy language, but rather provides the basis for exclusion of coverage." We are not persuaded.

■ The question is whether the Century-National policy provides coverage that is at least as favorable to the insureds as the coverage provided in the standard form. Under the Century-National policy, the intentional acts exclusion bars coverage for property losses sustained by insureds who are innocent of wrongdoing. But under the standard form, which must be read as including section 533's exclusion for losses caused by "the wilful act of *the* insured" (italics added), innocent insureds would not be barred from coverage. Thus, under section 2070, it cannot be said that the coverage provided by the Century-National policy, "with respect to the peril of fire, when viewed in its entirety, is substantially equivalent to or more favorable to the insured than that contained in such standard form fire insurance policy."[8]

### CONCLUSION AND DISPOSITION

As to innocent insureds, application of the intentional acts exclusion in the Century-National policy results in coverage that is not at least substantially equivalent to the level of protection provided in the statutory standard form fire policy. We therefore hold the exclusion is to that extent invalid. The judgment of the Court of Appeal is reversed, and the matter is remanded to that court for further proceedings consistent with the views expressed herein.

Cantil-Sakauye, C. J., Kennard, J., Werdegar, J., Chin, J., Moreno, J., and Corrigan, J., concurred.

---

[8] Because our analysis concerns a fire policy subject to the requirements of sections 2070 and 2071, it should not be read as necessarily affecting the validity of clauses that deny coverage for the intentional acts of "any" insured in other contexts.