In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

No. 16-3203

BARBARA STREIT and
WESLEY STREIT,

*Plaintiffs-Appellees*,

*v.*

METROPOLITAN CASUALTY
INSURANCE COMPANY,

*Defendant-Appellant*.

———————————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 15 cv 2461 — **Sharon Johnson Coleman**, *Judge*.

———————————

ARGUED DECEMBER 6, 2016 — DECIDED JULY 17, 2017

———————————

Before WOOD, *Chief Judge*, ROVNER and SYKES, *Circuit Judges*.

SYKES, *Circuit Judge*. On August 5, 2014, Wesley Streit Jr. set fire to the house where he lived with his parents, Barbara and Wesley Streit. At the time of the fire, the Streits' home was insured by Metropolitan Insurance Company. Under the Streits' insurance policy, Wesley Jr.'s act of arson triggered a

contractual exclusion of coverage. The Streits still submitted a claim, but pursuant to the policy's language, Metropolitan refused to cover the fire damage. Barbara and Wesley Streit sued, claiming that the exclusion in the Metropolitan policy was inconsistent with the Illinois Standard Fire Policy. The district court granted partial summary judgment in favor of the Streits, ruling that the Metropolitan policy impermissibly narrowed the coverage mandated by the Illinois Standard Fire Policy. We affirm. The Illinois Standard Fire Policy sets a minimum threshold for what fire-insurance policies must cover, and Metropolitan failed to provide that coverage.

## I. Background

Metropolitan Casualty Insurance Company issued a homeowner's insurance policy to Barbara and Wesley Streit that was effective from November 25, 2013, to November 25, 2014. The policy insured the Streits' home against risk of fire damage but contained an exclusion for losses arising from intentional actions by the policyholders.

The excluded events are listed below:

> A. **Intentional Loss**, meaning any loss arising out of any intentional or criminal act committed:
> 1. by **you** or at **your** direction; and
> 2. with the intent to cause a loss.
> This exclusion applies regardless of whether **you** are actually charged with or convicted of a crime.
>
> In the event of such loss, no one defined as **you** or **your** is entitled to coverage, even people de-

fined as **you** or **your** who did not commit or
conspire to commit the act causing the loss.

The policy goes on to define "you" and "your" as:

[T]he person or persons named in the Declara-
tions and if a resident of the same household:
A. the spouse of such person or persons;
B. the relatives of either; or
C. any other person under the age of twenty-
one in the care of any of the above.

On August 5, 2014, Wesley Jr. committed an intentional
act, which caused a loss, by setting fire to his parents' home.
(He has since pleaded guilty to a charge of aggravated
arson.) Because he is the son of Barbara and Wesley and
resided in their household at the time of the fire, Wesley Jr.
was a "you" or "your" as defined by the insurance policy. So
when the Streits submitted a claim to Metropolitan under
the policy for losses and damages resulting from the arson,
Metropolitan refused to pay.

The Streits sued Metropolitan in the Northern District of
Illinois based on diversity jurisdiction. *See* 28 U.S.C. § 1332.
Although the insurance policy itself excludes coverage for
their son's intentional act, the Streits argued that such an
exclusion conflicts with the Illinois Standard Fire Policy—a
standard baseline policy promulgated by the Illinois Direc-
tor of Insurance pursuant to statutory authority. The Streits
moved for partial summary judgment, which the district
judge granted. The judge held that the Metropolitan policy
must conform to the Standard Fire Policy but that a material
question of fact remained as to whether the Streits played
any role in directing or consenting to their son's arson. The

Streits and Metropolitan then stipulated that the Streits were innocent of any wrongdoing related to the fire, and based on that stipulation, the court entered judgment in favor of the Streits in the amount of $235,000. Metropolitan appealed.

## II. Analysis

Under Illinois law the Director of Insurance is required to "promulgate such rules and regulations as may be necessary to effect uniformity in all basic policies of fire and lightning insurance issued in this State, to the end that there be concurrency of contract where two or more companies insure the same risk." 215 ILL. COMP. STAT. 5/397 (1978). Pursuant to this authority, the Director of Insurance promulgated the Illinois Standard Fire Policy.

The Standard Fire Policy insures "against all direct loss by fire … , except as hereinafter provided." *Standard Fire Policy*, at 1, http://insurance.illinois.gov/prop_cas_is3_ checklists/statutes/StandardFirePolicy.pdf (capitalization omitted) (last visited July 17, 2017). The Policy provides the following express limitations on coverage:

> This Company shall not be liable for loss by fire or other perils insured against in this policy caused, directly or indirectly by: (a) enemy attack by armed forces, including action taken by military, naval or air forces in resisting an actual or an immediately impending enemy attack; (b) invasion; (c) insurrection; (d) rebellion; (e) revolution; (f) civil war; (g) usurped power; (h) order of any civil authority except acts of destruction at the time of and for the purpose of preventing the spread of fire, provided that

> such fire did not originate from any of the per-
> ils excluded by this policy; (i) neglect of the in-
> sured to use all reasonable means to save and
> preserve the property at and after a loss, or
> when the property is endangered by fire in
> neighboring premises; (j) nor shall this Com-
> pany be liable for loss by theft.

*Id.* at 2, lines 11–24.

The Standard Fire Policy also lists conditions that sus-pend insurance coverage. These include losses occurring

> (a) while the hazard is increased by any means
> within the control or knowledge of the insured;
> or
> (b) while a described building, whether in-
> tended for occupancy by owner or tenant, is
> vacant or unoccupied beyond a period of sixty
> consecutive days; or
> (c) as a result of explosion or riot, unless fire
> ensue, and in that event for loss by fire only.

*Id.* at 2, lines 31–37.

Though the Illinois Supreme Court has yet to address the question, both the statutory text and Illinois appellate courts make clear that in the event of a conflict between an insur-er's policy and the Standard Fire Policy, the latter controls. The Director of Insurance is required by statute to promul-gate rules and regulations "to effect uniformity" among fire-insurance policies and to ensure "that there be concurrency of contract." § 397. "Rules and regulations promulgated pursuant to authority delegated by specific provisions of the Insurance Code have the force of statute." *Lundquist v.*

*Allstate Ins. Co.*, 732 N.E.2d 627, 630 (Ill. App. Ct. 2000) (citing *Margolin v. Pub. Mut. Fire Ins. Co.*, 281 N.E.2d 728, 733 (Ill. App. Ct. 1972)); *cf. Williams v. New York Cent. R.R. Co.*, 84 N.E.2d 399, 403 (Ill. 1949) ("The rules adopted by the Interstate Commerce Commission in the exercise of its authority to set standards of equipment are an integral part of the act and have the force of the statute."). Furthermore, "[a]ll policies written in the State of Illinois must conform to the requirements of the Standard Policy." *Lundquist*, 732 N.E.2d at 630 (citing ILL. ADMIN. CODE tit. 50, § 2301.100 (1961)); *see also D'Agostino v. #7 Zimmie's, Inc.*, 77 F. Supp. 3d 719, 727 (N.D. Ill. 2014) ("[T]he [Illinois Administrative] Code provisions can clarify statutory law … .").

The coverage provided by the Metropolitan policy fails to conform to that required by the Standard Fire Policy. Under the Metropolitan policy, an intentional loss caused by *any* insured party suspends coverage for *all* insured parties—even those who were innocent of any wrongdoing. By contrast, the Standard Fire Policy suspends coverage if "the hazard is increased by any means within the control or knowledge of *the* insured." *Standard Fire Policy*, at 2, lines 31–32 (emphasis added).

The term "the insured" is not defined in the Standard Fire Policy. But as noted by many states interpreting identical language, the inclusion of the word "the" as opposed to "an" serves as a limitation. *See, e.g., Osbon v. Nat'l Union Fire Ins. Co.*, 632 So. 2d 1158, 1159–60 (La. 1994) ("[T]he phrase 'the insured' refers to a specific insured, namely, the insured who (1) is responsible for causing the loss and (2) is seeking to recover under the policy."). If one insured party commits an intentional harm but another insured party is innocent of

any wrongdoing, then the insurance coverage is suspended only as to *the* insured who caused the loss. An innocent coinsured may still recover. *See Icenhour v. Cont'l Ins. Co.*, 365 F. Supp. 2d 743, 751 (S.D. W. Va. 2004) ("The Standard Policy exclusion, as construed, permits an innocent co-insured to recover policy proceeds even when a fellow insured engages in arson that destroys the insured property and premises."); *Century-Nat'l Ins. Co. v. Garcia*, 246 P.3d 621, 624 (Cal. 2011) (explaining that identical language found in California's Standard Policy "protect[s] the ability of innocent insureds to recover for their fire losses despite neglectful or intentional acts of a coinsured); *Trinity Universal Ins. Co. v. Kirsling*, 73 P.3d 102, 106 (Idaho 2003) ("The great weight of persuasive authority shows that courts have found language referring to 'the insured,' such as that found in the standard policy exemptions, provides coverage to an innocent co-insured."); *Nangle v. Farmers Ins. Co. of Ariz.*, 73 P.3d 1252, 1257 (Ariz. Ct. App. 2003) ("The increased hazard provision in Arizona's Standard Policy, by using the term 'the insured' rather than 'any insured' or 'an insured,' evidences an intent to allow recovery by innocent coinsureds."); *see also Volquardson v. Hartford Ins. Co. of the Midwest*, 647 N.W.2d 599, 609 (Neb. 2002); *Lane v. Sec. Mut. Ins. Co.*, 747 N.E.2d 1270, 1272 (N.Y. 2001); *Watson v. United Servs. Auto. Ass'n*, 566 N.W.2d 683, 691 (Minn. 1997); *Osbon*, 632 So. 2d at 1160; *Borman v. State Farm Fire & Cas. Co.*, 521 N.W.2d 266, 268–70 (Mich. 1994); *Fireman's Fund Ins. Co. v. Dean*, 441 S.E.2d 436, 438 (Ga. Ct. App. 1994).

Under the Illinois Standard Fire Policy, Wesley Jr.'s intentional act of arson suspended insurance coverage only as to him. Barbara and Wesley Streit may still recover. Any

attempt by Metropolitan to proscribe their recovery is invalid and unlawful.

Despite Metropolitan's contentions to the contrary, this understanding of the Standard Fire Policy is not jeopardized by any public policy concerns. True, Illinois public policy holds that an agreement "to indemnify against willful misconduct would, as a general rule, be … unenforceable." *Davis v. Commonwealth Edison Co.*, 336 N.E.2d 881, 885 (Ill. 1975). This is rooted in the common-sense principle best stated by Judge Cardozo: "[N]o one shall be permitted to take advantage of his own wrong." *Messersmith v. Am. Fid. Co.*, 133 N.E. 432, 433 (N.Y. 1921). But under the Standard Fire Policy, the insured does *not* recover damages caused by his own wrong.[1] The Standard Fire Policy suspends coverage for loss occurring "while the hazard is increased by any means within the control or knowledge of the insured." *Standard Fire Policy*, at 2, lines 31–32. Both public policy and the Standard Fire Policy prevent an insured party from intentionally destroying his property in order to reap the insurance profits. Barbara and Wesley Streit do not seek insurance coverage for damage caused by their own intentional actions but rather for the intentional actions of some-

---

[1] According to Metropolitan, the district court's understanding of the Standard Fire Policy violates public policy. In support Metropolitan quotes from the district court's opinion: "Nowhere does the Standard Policy exclude coverage for intentional conduct, including arson, and therefore fires caused by intentional conduct must be covered … ." But Metropolitan cuts off the most crucial part of that sentence: "[F]ires caused by intentional conduct must be covered *if all other conditions are met*." One of these "other conditions" that must be met is that the hazard may not be caused or increased by the insured.

one else—their son. This does not conflict with Illinois public policy.

Finally, the Standard Fire Policy's treatment of innocent coinsureds is not foreclosed by any Illinois statute. The only statute cited by Metropolitan that even mentions innocent insureds provides the following:

> (a) No company issuing a policy of property and casualty insurance may use the fact that an applicant or insured incurred bodily injury as a result of a battery or other violent act committed against him or her by a spouse or person in the same household as a sole reason for a rating, underwriting, or claims handling decision.
>
> (b) If a policy excludes property coverage for intentional acts, the insurer may not deny payment to an innocent co-insured who did not cooperate in or contribute to the creation of the loss if the loss arose out of a pattern of criminal domestic violence and the perpetrator of the loss is criminally prosecuted for the act causing the loss. …

215 ILL. COMP. STAT. 5/155.22b (2004).

This statute creates a baseline rule that applies to all types of insurance policies, not just fire insurance. It provides guidance *if* a policy excludes coverage for intentional acts. It does not explain *when* a policy must (or must not) exclude coverage for intentional acts. This question, left open by the statute, is answered by the Standard Fire Policy: The Standard Fire Policy suspends coverage for intentional

losses only as to the acting insured. Coverage for innocent insureds like Barbara and Wesley remains intact.

Because the Metropolitan policy fails to provide the minimum coverage outlined in the Standard Fire Policy, the judgment of the district court is

AFFIRMED.